COMPAÑÍA FERROVIARIA DE CIRCUNVALACIÓN DE PUERTO RICO, demandante y apelante, *v.* SECRETARIO DE HACIENDA, demandado y apelado.

Número 11422.

*Sometido:* 4 de abril de 1956. *Resuelto:* 25 de junio de 1958.

*James R. Beverley* y *Carmen B. Hernández,* abogados de la apelante; *Hon. Secretario de Justicia J. B. Fernández Badillo*

*(José Trías Monge, ex-Secretario de Justicia,* en el alegato) y *J. C. Santiago Matos, Procurador Auxiliar,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

Según los hechos estipulados en este caso, la apelante Compañía Ferroviaria de Circunvalación de Puerto Rico, es una corporación doméstica, organizada en el 1920, con el único fin de adquirir las acciones de la Compañía de los Ferrocarriles de Puerto Rico, una compañía española constituída en el 1888 y las acciones de la American Railroad Co. of Porto Rico, una corporación norteamericana, organizada en el 1902, de acuerdo con las leyes del estado de Nueva York.

La apelante adquirió las doce mil acciones de la Compañía de los Ferrocarriles de Puerto Rico y es tenedora de dichas acciones, con excepción de 891 que le ha´sido imposible recoger por estar en manos de ciertos inversionistas, pero cuyo importe ha sido depositado en un banco de Francia, a disposición de los accionistas desconocidos; además adquirió las tres mil acciones emitidas por la American Railroad Company of Porto Rico.

La Compañía de los Ferrocarriles de Puerto Rico era la dueña de las propiedades pertenecientes al sistema ferroviario; la American Railroad Company of Porto Rico era la que operaba el sistema, y con excepción de las cuentas a cobrar contra la Compañía de los Ferrocarriles de Puerto Rico por la operación del sistema ferroviario, no tiene otros bienes; la apelante Compañía Ferroviaria de Circunvalación de Puerto Rico sólo poseía las acciones de las otras dos compañías y no desempeñaba ninguna otra función que no fuera establecer las normas para el gobierno de la empresa ferroviaria.

La Compañía de los Ferrocarriles de Puerto Rico y la American Railroad Company of Porto Rico, iniciaron ante la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico, un procedimiento de reorganización de acuerdo con la Ley de Quiebras, y en virtud de dicho procedimiento,

fueron reorganizadas el 15 de junio de 1950 en una nueva compañía, la Puerto Rico Railroad & Transport Company, (T. 100). En virtud de dicha reorganización, las compañías deudoras, Compañía de los Ferrocarriles de Puerto Rico y la American Railroad Company of Porto Rico fueron liberadas de todas sus deudas y obligaciones, y por el decreto final de 15 de junio de 1950, todos los derechos e intereses de los accionistas y deudores, no exceptuados por el Plan de Reorganización Enmendado de 27 de mayo de 1949, (T. 112–130) se declararon terminados, (T. 102).

El capital de la apelante Compañía Ferroviaria de Circunvalación de Puerto Rico consistía de 47,599 acciones de $100 a la par. Desde que la apelante fué organizada en el 1920 y hasta el año contributivo 1948–49, la apelante estuvo pagando contribuciones sobre la propiedad a base del valor que la misma apelante declaraba en sus planillas, o sea, a razón de $15 por acción; pero en el año 1948–49 la apelante valoró dichas acciones a razón de $5 por acción. El Secretario de Hacienda estuvo conforme con la valoración de $15 por acción, pero no estuvo conforme con la valoración posterior de $5 por acción, y para el año 1948–49 y años posteriores, determinó la contribución a ser pagada de acuerdo con la primera valoración informada por el contribuyente.

Los pagos efectuados por la apelante Compañía Ferroviaria de Circunvalación, envueltos en este caso, fueron los siguientes:

| Recibo Número | Año | Semestre | Contribuciones | Importe Satisfecho | Fecha de Pago |
|---|---|---|---|---|---|
| 86.............. | 1944–45.......... | 1 | $10,201.34 | $10,201.34 | 11/29/44 |
| | | 2 | 10,201.34 | 10,201.34 | 1/4/45 |
| 793.............. | 1945–46.......... | 1 & 2 | 19,546.62 | 19,546.62 | 5/21/46 |
| 105.............. | 1946–47.......... | 1 & 2 | 20,260.00 | 20,260.00 | 2/28/47 |
| 106......... .... | 1947–48.......... . | 1 & 2 | 20,474.30 | 20,474.30 | 8/25/47 |
| 279.............. | 1948–49.......... | 1 & 2 | 20,474.30 | 6,824.72 | 10/6/48 |
| 2,252.............. | 1949–50.......... | 1 & 2 | 22,685.82 | 7,561.94 | 7/26/50 |
| 1,568.............. | 1950–51.......... | 1 & 2 | 22,685.82 | 7,561.94 | 8/29/50 |

Parece que el pago por los años contributivos 1948–49, 1949–50 y 1950–51, fueron hechos con el objeto de apelar al anterior Tribunal de Contribuciones de Puerto Rico, ya que la Ley número 235 de 10 de mayo de 1949, en vigor desde el 1ro. de julio de 1949, exigía el pago de aquella parte de la contribución con la cual se estuviera conforme antes que el contribuyente pudiera recurrir a dicho Tribunal.

Basándose en el hecho que la Compañía de los Ferrocarriles de Puerto Rico gozaba de una exención legislativa—hecho que es virtualmente exacto hasta el 15 de junio de 1950, fecha en que dichas compañías fueron reorganizadas, según ya hemos visto—la apelante Compañía Ferroviaria de Circunvalación de Puerto Rico, "como poseedora de todas las acciones emitidas por la American Railroad Company of Porto Rico y por la Compañía de los Ferrocarriles de Puerto Rico", solicitó la devolución de las contribuciones sobre la propiedad pagadas por la apelante, la cual le fué denegada por la ilustrada Sala sentenciadora.

En apelación ante nos, la apelante Compañía Ferroviaria de Circunvalación de Puerto Rico señala como errores, los siguientes: (1) El Tribunal Superior de Puerto Rico, Sala de Asuntos Contributivos, cometió error al resolver que a las acciones de la apelante Compañía Ferroviaria de Circunvalación de Puerto Rico no les era extensiva la exención contributiva establecida por ley sobre los bienes de la Compañía de los Ferrocarriles de Puerto Rico y (2) El Tribunal Superior de Puerto Rico, Sala de Asuntos Contributivos, cometió error al resolver con relación a los años 1949–50 y 1950–51, que la exención contributiva establecida por ley en relación con los bienes de la Compañía de los Ferrocarriles de Puerto Rico, no le era extensiva a las propias acciones extranjeras de la Compañía de los Ferrocarriles de Puerto Rico, sobre las cuales impuso la contribución el Secretario de Hacienda de Puerto Rico.

■■ (1) Se trata en este caso de una exención contributiva conferida expresamente por estatuto. Siendo esto así,

tenemos que recurrir a la historia legislativa de la exención para determinar su contenido y extensión. El 4 de febrero de 1902 quedó aprobada la "Ley para eximir del pago de contribuciones durante un período de años, a ciertos ferrocarriles para la construcción y explotación de los cuales, han sido concedidas franquicias por el Consejo Ejecutivo de Puerto Rico", que dispone lo siguiente:

"Artículo 1. Que la Compañía de los Ferrocarriles de Puerto Rico, *sus sucesores y cesionarios,* quedan por la presente exentos del pago de toda contribución, de cualquier nombre y naturaleza, insular y municipal o local, por el período de veinte y cinco (25) años a contar de la fecha en que dicha compañía acepte ciertas ordenanzas votadas por el Consejo Ejecutivo de Puerto Rico en 28 de octubre de 1901, por las cuales se concede á la citada compañía derecho para extender sus líneas ferroviarias y entre ciertos puntos de la Isla de Puerto Rico; debiendo la mencionada exención del pago de contribuciones incluir cualesquiera contribuciones antes de ahora impuestas y en la actualidad adeudadas, y comprender las líneas de ferrocarril y fincas antes de ahora construídas y adquiridas por la referida Compañía así como las líneas de ferrocarril y fincas (sic) pue (que) en adelante ha de construir y adquirir.

"Artículo 2. Que la (sic) Port America Company (American Railroad Company of Porto Rico) corporación organizada con arreglo a las leyes del Estado de Nueva Jersey; *y sus sucesores y cesionarios,* quedan por la presente exentos del pago de toda clase de contribuciones, insulares y municipales ó locales, durante el período de construcción y por espacio de quince años después, según se dispone en cierta ordenanza votada por el Consejo Ejecutivo de Puerto Rico en 28 de octubre 1901, por la cual se concede a dicha compañía, una franquicia con el fin de construir y (sic) esplotar ferrocarriles en la Isla de Puerto Rico.

"Artículo 3. Ninguna de las mencionadas compañías gozará ó disfrutará del beneficio de las exenciones por la presente otorgadas, hasta que haya archivado en poder del Gobernador de Puerto Rico un convenio en toda regla, por escrito, por el cual cada una de ellas de por sí, *sus sucesores y cesionarios,* se comprometa a transportar gratis durante el período de exención de contribuciones que se le concede por la presente, oficiales y números de cualquier forma militar o de la Policía Insular cuando

dichos oficiales y números vayan vestidos de uniformes y estén en el desempeño de sus deberes, o cuando no vestidos de uniforme, pero en alguna comisión especial de servicio, presenten una solicitud por escrito pidiendo transporte gratis firmada por el Gobernador o por cualquiera Jefe de los departamentos generales del Gobierno." (Bastardillas nuestras.)

El día 26 de julio de 1921 se aprobó la Ley núm. 90 "para autorizar al Comisionado del Interior a proceder al estudio y construcción de las líneas férreas necesarias para empalmar las líneas actuales de carácter público en la región oriental de Puerto Rico; para adquirir por compra, arrendamiento o expropiación forzosa, cualquier propiedad necesaria al objeto de esta Ley y *para eximir del pago de contribución a cualquier compañía que construya y explote cualquier sección o trozo de ferrocarril de los especificados en esta ley, a fin de establecer una línea de ferrocarril de circunvalación.*" El art. 9 de dicha ley dispone lo siguiente:

"La autorización que por esta Ley se concede al Comisionado del Interior para proceder a la construcción de las líneas férreas enumeradas en el Artículo 1 de la presente Ley, no impedirá que todas, cualesquiera o cualquiera de dichas líneas férreas *sean construídas y explotadas* por cualquier compañía de ferrocarril de carácter público que esté dispuesta y en condiciones de construir todas o cualquiera de dichas líneas o secciones mediante franquicia concedida por la Comisión de Servicio Público, siempre que tal franquicia sea solicitada antes que el Comisionado del Interior haya dado comienzo a la construcción de la línea o líneas cuya construcción se interese . . . *Disponiéndose,* que cualquier compañía de servicio público que construyere y explotare cualquiera de las líneas especificadas en el referido Artículo primero de esta Ley, quedará exenta de contribución por diez años, por el valor de la tasación de las expresadas líneas.

"Toda compañía de ferrocarril de carácter público que obtuviere una franquicia bajo las disposiciones del párrafo anterior, quedará obligada, por la misma franquicia, una vez terminada la construcción de la línea o líneas a que aquella se refiera, a empalmar la sección o secciones terminadas con las vías de las compañías de servicio público existentes, y dedicarse a un servicio público de transporte de carga y pasajeros por la sección

o secciones así terminadas en combinación con los servicios de las compañías existentes, de carácter público con cuyas vías queden empalmadas y de acuerdo con las reglas que la Comisión de Servicio Público prescribiere." (Bastardillas nuestras, menos el disponiéndose.)

El día 18 de julio de 1925 se aprobó la Ley núm. 49 "Para enmendar los artículos 1 y 9 de la Ley número 90 . . . para hacer extensiva la exención de contribuciones a todas las líneas que formen o hayan de formar parte del ferrocarril de circunvalación tan pronto como cualquiera de dichas líneas haga la conexión o empalme que por esta Ley se requiere en pro de un servicio general y mutuo", cuyo art. 9 ahora enmendado, dispone lo siguiente: "La autorización que por esta Ley se concede al Comisionado del Interior para proceder a la construcción de las líneas férreas enumeradas en el artículo 1 de la presente Ley, no impedirá que todas, cualesquiera o cualquiera de dichas líneas férreas sean construídas y explotadas por cualquier compañía de ferrocarril de carácter público que esté dispuesta y en condiciones de construir todas o cualquiera de dichas líneas o secciones mediante franquicia concedida por la Comisión de Servicio Público, siempre que tal franquicia sea solicitada dentro del plan ya fijado por la Comisión de Servicio Público, antes que el Comisionado del Interior haya dado comienzo a la construcción de la línea o líneas cuya construcción se interese. Y al efecto se faculta al Comisionado del Interior para que haga, a la vez, las necesarias gestiones con el fin de conseguir que cualquier compañía de servicio público construya o explote todas o cualquiera de las secciones o líneas de ferrocarril especificadas en el artículo 1 de esta Ley; *Disponiéndose*, que cualquier compañía de Ferrocarril de Servicio Público que forme, o haya de formar parte del Ferrocarril de Circunvalación, y que actualmente esté exenta del pago de contribuciones, continuará exenta de tales contribuciones por diez años más, excepto la llamada contribución de ingresos (*Income Tax*) tan pronto se verifique el empalme de sus respectivas líneas con cualquiera de las

secciones de Oriente especificadas . . . y, *disponiéndose además*, que también quedará exenta de la contribución antes expresada cualquiera otra compañía de Ferrocarril de Servicio Público que *construya* la línea o líneas que sean necesarias para empalmar con otra cualquiera de las secciones especificadas en el artículo primero de esta Ley, o con cualquiera de las líneas de circunvalación que tienen actualmente por terminales las ciudades de Carolina y Guayama; y disponiéndose, además, que las compañías y líneas de servicio público que por esta sección de la presente Ley (sic) quedan exceptuadas del pago de contribución, estarán en el deber de prestar el servicio de transportación gratis o libre de gastos (durante el período de exención) a los oficiales y miembros de la Policía Insular y de fuerzas militares, cuando estén en uniforme y en el desempeño de funciones oficiales, así como a los presos y a los niños de los Asilos, pobres de solemnidad, representantes de Instituciones benéficas y caritativas y dementes para su ingreso en el Manicomio Insular; y estarán obligadas, además, a prestar al Gobierno Insular cualquier otra ayuda que éste requiera como necesaria por razones de interés público."

El día 7 de mayo de 1927 se aprobó la Resolución Conjunta núm. 1, que en la parte pertinente a este estudio, dispone: "Que la Compañía de los Ferrocarriles de Puerto Rico, *sus sucesores y cesionarios*, quedan por la presente exentos de toda contribución insular, local y municipal, de cualquier nombre y naturaleza, excepción hecha de la cuota que le corresponda pagar en virtud de la Ley de Indemnizaciones a Obreros por Accidentes del Trabajo, y de la contribución de ingresos (*income tax*) por el período de quince años, a contar desde la fecha en que venció el período de exención que le fué concedido por la citada ley, aprobada en febrero 4, 1902; *Disponiéndose*, que esta exención de contribuciones cesará desde el momento en que la Comisión de Servicio Público declarare, previa investigación que hiciere de la Compañía de los Ferrocarriles de Puerto Rico, que el capital de ésta, realmente

invertido en el negocio, produce una utilidad líquida de un ocho (8) por ciento anual, por lo menos" ....

"Que dicha Compañía de los Ferrocarriles de Puerto Rico no gozará o disfrutará del beneficio de la exención por la presente otorgádole hasta que haya archivado en poder del Gobernador de Puerto Rico, un convenio formal, por escrito, por el cual se compromete, (sic) de por sí y a nombre de sus *sucesores y cesionarios*, a transportar gratis, durante el período de exención de contribuciones que se le concede por la presente, oficiales y números de la Policía Insular y fuerzas militares" ..... (Fuera de los términos "income tax" y "disponiéndose", bastardillas nuestras.)

El 14 de mayo de 1951 se aprobó la Ley núm. 435, de cuya exposición de motivos copiamos lo siguiente: "considerando, que tanto la Compañía de los Ferrocarriles de Puerto Rico como la American Railroad Company of Porto Rico están bajo Sindicatura ante la Corte de Distrito de los Estados Unidos para Puerto Rico, a petición de las mismas, en solicitud de reorganización bajo el Capítulo X de la Ley Federal de Quiebras desde el 1 de agosto de 1947, por encontrarse ambas imposibilitadas de continuar operando debido a dificultades económicas; y considerando que mediante un plan de reorganización sometido por el Síndico de dichas compañías, ya aprobado por la Corte de Distrito de los Estados Unidos para Puerto Rico en virtud del Decreto Final dictado por dicha corte con fecha 15 de junio de 1950, dicha Sindicatura está próxima a terminar; y considerando que dentro del plan de reorganización se contempla una nueva corporación constituída por los obreros del ferrocarril, la que se hará cargo de las propiedades y equipo de dicha empresa, para continuar las operaciones ferroviarias desde el viaducto frente al Campamento Buchanan, Km. 13/370 de la línea general, hasta Guayama; y considerando, que ya se ha organizado con el propósito arriba expuesto e incorporado bajo las Leyes de Puerto Rico, la corporación doméstica 'Puerto Rico Railraod and Transport Company' con ese fin; y considerando, además,

que es imprescindible que para que la nueva organización obrero-patronal 'Puerto Rico Railroad and Transport Company' pueda asumir y continuar las operaciones del ferrocarril, el cual se considera un factor de vital importancia a la economía de El Pueblo de Puerto Rico, que se le extienda a ella y amplíe la exención de contribuciones de que ha venido gozando la empresa ferroviaria antecesora desde su origen; y considerando, que Compañía Ferroviaria de Circunvalación de Puerto Rico, una corporación también organizada bajo las leyes de Puerto Rico, es la entidad tenedora de todas las acciones emitidas y en circulación de American Railroad Company of Porto Rico y como de un noventa y ocho por ciento de todas las acciones emitidas y en circulación de Compañía de los Ferrocarriles de Puerto Rico; y considerando, que desde el mes de octubre de 1950 la Autoridad de Transporte de Puerto Rico es la tenedora de mas del noventa y nueve por ciento de las acciones emitidas y en circulación de la referida corporación del país Compañía Ferroviaria de Circunvalación de Puerto Rico, las cuales acciones, conforme (sic) el convenio que la referida Autoridad de Transporte de Puerto Rico tiene con 'Puerto Rico Railroad and Transport Company' habrán de ser traspasadas a esta última corporación quedando en última instancia esta entidad sujeta al peso del pago de las contribuciones sobre la propiedad impuesta el día 1ro. de enero de 1951 a la Compañía Ferroviaria de Circunvalación de Puerto Rico sobre las acciones que dicha entidad posea de American Railroad Company of Porto Rico y Compañía de los Ferrocarriles de Puerto Rico, es conveniente, por tanto, que también se exima del pago de contribuciones a Compañía Ferroviaria de Circunvalación de Puerto Rico en cuanto a las acciones que ésta tenía o tenga de American Railroad Company of Porto Rico y Compañía de los Ferrocarriles de Puerto Rico, *desde la fecha de efectividad de la exención que por esta Ley se concede o durante la vigencia de la misma.*" (Bastardillas nuestras.)

El art. 4 de esta última ley dispone: "La exención contributiva que por esta Ley se concede a la 'Puerto Rico Railroad and Transport Company', *sus cesionarios o sucesores*, se hace extensiva también, en la misma extensión y alcance, sin limitación alguna, a sus *antecesoras*, las corporaciones Compañía de los Ferrocarriles de Puerto Rico y American Railroad Company of Porto Rico, hasta la fecha en que ambas cesen en sus negocios y operaciones, y sean disueltas, y así como a Compañía Ferroviaria de Circunvalación de Puerto Rico, en cuanto a las acciones de American Railroad Company of Porto Rico y Compañía de los Ferrocarriles de Puerto Rico de que era tenedora a la fecha de la efectividad de la exención que por esta Ley se concede y/o durante la vigencia de la misma." (Bastardillas nuestras.)

Examinada en su totalidad la historia legislativa de esta exención, se ve claro que la exención fué concedida originalmente a dos corporaciones específicas: la Compañía de los Ferrocarriles de Puerto Rico y la American Railroad Company of Porto Rico; que posteriormente y hasta el 1ro. de enero de 1951, la compañía exenta lo fué la Compañía de los Ferrocarriles de Puerto Rico, *sus sucesores y cesionarios*. Siendo las exenciones contributivas verdaderas derogaciones del poder del Soberano no deben extenderse mas allá de los términos expresos y exactos del estatuto que las otorga. La interpretación debe ser *strictissimi juris: Convington & Lexington Turnpike Road Company* v. *A. P. Sanford*, 164 U. S. 578, 41 L. Ed. 560, (Harlan), (1896), cita precisa a las págs. 586–587 U. S., 563 L. Ed.; *William G. Ford, Jr. and Louis P. Levy* v. *Delta & Pine Land Company*, 164 U. S. 662, 41 L. Ed. 590 (Brewer), (1897), cita precisa a las págs. 666 U. S., 592 L. Ed. Sólo puede reclamar una exención contributiva aquella persona o entidad claramente comprendida entre los términos descriptivos del estatuto que la crea: *P. P. Picard* v. *The East Tennessee, Virginia and Georgia Railroad Company*, 130 U. S. 637, 32 L. Ed. 1051, (Field), (1889), cita precisa a las págs. 641–642 U. S., 1052–

1053 L. Ed.; *Chesapeake and Ohio Railway Company* v. *Miller*, 114 U. S. 176, 29 L. Ed. 121 (Matthews), (1885), cita precisa a las págs. 185–186 U. S., 124 L. Ed.; *Memphis and Little Rock Railroad Company* v. *Berry*, 112 U. S. 609, 28 L. Ed. 837 (Matthews), (1884), cita precisa a las págs. 615–618 U. S., 840 L. Ed.; *Louisville and Nashville Railroad Company* v. *Palmes*, 109 U. S. 244, 27 L. Ed. 922 (Matthews), (1883), cita precisa a las págs. 249–251 U. S., 924 L. Ed.; *Charles Morgan* v. *State of Louisiana*, 93 U. S. 217, 23 L. Ed.; 860, (Field), (1876), cita precisa a las págs. 217–224 U. S., 860–861 L. Ed.

En la demanda se alega que la apelante Compañía Ferroviaria de Circunvalación de Puerto Rico es *poseedora* de todas las acciones emitidas por la American Railroad Company of Porto Rico y la Compañía de los Ferrocarriles de Puerto Rico, (L. 1, 11, 16). En los hechos estipulados se describe a la apelante como una compañía "meramente inversionista", (L. 41). De igual forma se le describe en el alegato de la demandante-apelante (pág. 13). Para nosotros llegar a la conclusión que la apelante está favorecida por la exención de contribuciones sobre la propiedad de que gozara la Compañía de los Ferrocarriles de Puerto Rico, durante el período cubierto por esta reclamación, tendríamos que concluir que la apelante Compañía Ferroviaria de Circunvalación de Puerto Rico, es una "sucesora" o una "cesionaria" de la Compañía de los Ferrocarriles de Puerto Rico.

El método mas seguro para determinar si una corporación resulta sucesora de otra, no es determinar si ha habido una fusión (*merger*) o una consolidación (*consolidation*), sino determinar si ha habido un traspaso real y efectivo por la antecesora, no sólo del negocio, sino de las franquicias, propiedades, pasivo y buen crédito (*good will*) a la sucesora. 15 Fletcher, *Cyclopedia of the Law of Private Corporations* 326, sec. 7203, (ed. de Callaghan and Company de 1938). Siendo esto así, no cabe la menor duda que un mero traspaso

de las acciones de una corporación a otra, no convierte a la segunda en una sucesora de la primera.

Sabido es que el cuerpo de bienes que representa el capital en acciones de una corporación es distinto al resto de los bienes y propiedades de la corporación: *Klein* v. *Board of Tax Supervisors*, 282 U. S. 19, 75 L. Ed. 140 (Holmes), (1930), cita precisa a la pág. 23-24 U. S., 142 L. Ed.; *Hawley* v. *Malden*, 232 U. S. 1, 58 L. Ed. 477 (Hughes), (1914), cita precisa a la pág. 9 U.S., 481 L. Ed.; *Wright* v. *Georgia Railroad & Banking Co.*, 216 U. S. 420, 54 L. Ed. 546 (Lurton), (1910), cita precisa a las págs. 426-428 U. S., 553 L. Ed.; *Home Savings Bank* v. *Des Moines*, 205 U. S. 503, 51 L. Ed. 901, (Moody), (1907), cita precisa a la pág. 510 U. S., 906 L. Ed.; *Farrington* v. *Tennessee*, 95 U. S. 679, 24 L. Ed. 558 (Swayne), (1878), cita precisa a la pág. 686 U. S., 560 L. Ed.

El hecho de que una compañía poseedora, o tenedora tenga todas las acciones de una segunda corporación no afecta la entidad separada y continua de ésta: *State ex rel City of Tacoma* v. *Tacoma Railway and Power Co.*, 112 Pac. 506, (Chadwick), (1911), cita precisa a la pág. 508. Lo mismo se ha resuelto en cuanto a la identidad entre ambas corporaciones; en cuanto a sus directores y accionistas comunes: *Haskell* v. *McClintic-Marshall Co.*, 289 Fed. 405 (Rudkin), (1923), cita precisa a la pág. 413. Véase además "Capital and Capital Stock" Frederick Dwight, 16 Yale L. J. 161 *et seq.* (1907).

La misma regla podría aplicarse para determinar si una corporación resulta cesionaria de otra. No es el mero traspaso de las acciones lo que le daría carácter a la cesión como tal, sino el traspaso directo de las franquicias, propiedades, pasivo y buen crédito. Es indudable que en este caso la apelante, Compañía Ferroviaria de Circunvalación de Puerto Rico, no resulta una cesionaria de las compañías exentas. Es conveniente recordar que al aprobarse la Ley núm. 435 de 14 de mayo de 1951, la Asamblea Legislativa de Puerto Rico, incluyó expresamente a la apelante Compañía Ferroviaria de

Circunvalación de Puerto Rico entre las compañías exentas. Lo cual demuestra que no fué la intención legislativa anterior eximir a la apelante como posible compañía tenedora o poseedora de las acciones de las otras dos.   Cualquier legislación posterior puede ser considerada para interpretar propiamente el alcance de la legislación anterior: *Great Northern Railway Company* v. *United States*, 315 U. S. 262, 86 L. Ed. 836, (Murphy), (1942), cita precisa a las págs. 272-273, 277-278 U.S., 841, 844 L. Ed.

Siendo el alcance de las exenciones contributivas una cuestión de estatutos especiales aprobados para crear dichas exenciones, de nada nos valdría el estudio de los estatutos generales sobre el mismo asunto.

*Debe confirmarse la sentencia apelada.*

El Juez Asociado Sr. Santana Becerra no intervino.