COCA–COLA BOTTLING COMPANY OF PUERTO RICO, INC. y
OTRAS, demandantes y apeladas, *v.* SECRETARIO DE
HACIENDA DE PUERTO RICO, demandado y apelante.

*Número:* O-79-259     *Resuelto:* 11 de mayo de 1982

*Héctor A. Colón Cruz, Procurador General, y Reina Colón, Procuradora General Auxiliar,* abogados del apelante; *Fernando Pérez Colón,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Mediante la Ley Núm. 1 del 4 de febrero de 1975 que enmendó la Núm. 2 del 20 de enero de 1956 conocida como Ley de Impuestos Sobre Artículos de Uso y Consumo (13 L.P.R.A. sec. 4010(b)(23)) se impuso una contribución de no más de un cinco por ciento sobre los artículos de consumo hasta entonces no sujetos a arbitrios con la excepción entre otros, de alimentos, medicinas, ropa y calzado. Las bebidas gaseosas fueron excluidas de la exención. Dispone así:

Sec. 4010. *Impuestos sobre artículos*

(a) *Imposición de la Contribución.* Se impondrá, cobrará, y pagará, a los tipos prescritos en el apartado (b) subsiguiente, y de conformidad con las secciones de este Subtítulo allí señaladas, un impuesto sobre los renglones enumerados en el mismo. El impuesto regirá si el artículo ha sido introducido, vendido, consumido, usado, traspasado o adquirido, en Puerto Rico; y, excepto según se dispone en el apartado (d), para los renglones 3, 3A y 3B del apartado (b), se pagará por una sola vez, en el tiempo y en la forma especificados en la Parte B del Capítulo 354 de este Subtítulo. La aplicación de este

impuesto estará sujeta a las exenciones enumeradas en la Parte D del Capítulo 353.

(b) *Tabla de Impuestos.* Los artículos sujetos al pago de impuestos son los que a continuación se expresan:

| Sección | | Objeto Gravado | Determinación del Impuesto |
|---------|---|----------------|----------------------------|
| . | . | . . | . . . . |
| 23 | 4039 | Todo artículo de uso y consumo no gravado, excluido del gravamen o exento por disposición de este Subtítulo | 5% sobre el "precio contributivo en Puerto Rico". |

Sec. 4039. *Artículos uso y consumo no gravados, excluidos del gravamen o exentos bajo este Subtítulo*

. . . . . . . .

(b) *Exclusiones del Gravamen.* El impuesto fijado sobre todo artículo de uso y consumo no gravado, excluido del gravamen o exento por disposición de este Subtítulo no será aplicable a:

. . . . . . . .

(7) Los alimentos: El término alimentos incluye todas las substancias sólidas o líquidas que ingieren el hombre y los animales para su sustento y nutrición, excepto gaseosas. 13 L.P.R.A. sec. 4039 (b)(7).

El tribunal de instancia concluyó que la antes transcrita sección, la cual excluye a las gaseosas de la exención, constituye una violación a la Sec. 7 del Art. II de nuestra Constitución([1]) y a la Enmienda XIV de la Constitución de

---

([1]) Dispone así:

"Se reconoce como derecho fundamental del ser humano el derecho a la vida, a la libertad y al disfrute de la propiedad. No existirá la pena de muerte. Ninguna persona será privada de su libertad o propiedad sin debido proceso de ley, ni se negará a persona alguna en Puerto Rico la igual protección de las leyes. No se aprobarán leyes que menoscaben las obligaciones contractuales. Las leyes determinarán un mínimo de propiedad y pertenencias no sujetas a embargo."

los Estados Unidos. (²) Consideró que la clasificación establecida era caprichosa y arbitraria, la cual discriminaba contra las gaseosas. Concluyó que violaba el derecho a la igual protección de las leyes garantizado por las disposiciones constitucionales mencionadas y por lo tanto procedía el reintegro de las contribuciones pagadas. Acordamos revisar.

El Tribunal Supremo de los Estados Unidos ha sostenido una y otra vez que un Estado, en el ejercicio del poder de imponer contribuciones, tiene amplia discreción de seleccionar los sujetos y objetos a ser tributados. *Rapid Transit Corp.* v. *New York*, 303 U.S. 573, 578 (1937); *Magoun* v. *Illinois Trust & Savings Bank*, 170 U.S. 283, 294 (1898); *Heisler* v. *Thomas Colliery, Co.*, 260 U.S. 245, 255 (1922). El poder de seleccionar los sujetos y objetos a ser tributados es inherente al ejercicio del poder de imponer contribuciones. Así como también es inherente el poder de escoger cuáles estarán exentos de tributación. Ni el derecho al debido proceso de ley, ni el derecho a la igual protección de las leyes impone una regla rígida que exija igualdad en la imposición de las contribuciones. *Carmichael* v. *Southern Coal Co.*, 301 U.S. 495, 509 (1936); *Bell's Gap R. Co.* v. *Pennsylvania*, 134 U.S. 232, 237 (1890); *Lawrence* v. *State Tax Comm'r*, 286 U.S. 276, 284 (1932). La Asamblea Legislativa tiene vasta discreción para establecer clasificaciones. Si están razonablemente relacionadas con el propósito de la legislación, se justifica la clasificación, *Rapid Transit*, supra, pág. 578. Bajo la Enmienda XIV se ha sostenido que las distinciones no son arbitrarias

---

(²) Dispone así:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

si puede concebirse cualquier situación que las justifique. Se presumirá que la clasificación descansa sobre una base racional que existió a la fecha de la aprobación de la ley. *Miranda v. Sec. de Hacienda*, 77 D.P.R. 171 (1954); *Rivera v. Corte*, 62 D.P.R. 513 (1943); *Buscaglia, Tes. v. Tribunal de Contribuciones*, 64 D.P.R. 602 (1945); *Barceló & Cía v. Buscaglia, Tes.*, 67 D.P.R. 108 (1947); *Buscaglia, Tes. v. Tribl. Contribuciones*, 69 D.P.R. 99 (1948); *U.S. Brewers Assoc. v. Srio. de Hacienda*, 109 D.P.R. 456, 461 (1980); *Rapid Transit v. New York*, supra, pág. 578; *Rast v. Van Deman & Lewis Co.*, 240 U.S. 342, 357 (1916); *Borden's Co. v. Baldwin*, 293 U.S. 194, 209 (1934); *Metropolitan Casualty Ins. Co. v. Brownell*, 294 U.S. 580, 584 (1935).

En *Rivera v. Buscaglia*, 146 F.2d 461, 465 (1944), se dijo:

> Son pocos y espaciados los casos en que una ley de contribuciones ha sido invalidada por ese motivo. En el campo contributivo, más que en ningún otro las legislaturas poseen la mayor libertad para clasificar.

Cuando el legislador clasifica y define para fines contributivos, lo hace porque entiende que no debe tributarlo todo y toma en cuenta la capacidad del contribuyente para absorber la contribución y su impacto inflacionario en la economía.

A la luz de estos principios pasamos a considerar el presente caso. La Ley Núm. 1 del 4 de febrero de 1975 enmendó la Ley de Impuestos Sobre Artículos de Uso y Consumo, imponiéndole tributo a productos que antes estaban exentos. Excluyó de esta imposición, entre otros productos, a los alimentos. En su definición de alimentos incluyó todas las substancias sólidas o líquidas que utilizan las personas para su sustento y nutrición, exceptuando las gaseosas. Tanto las gaseosas producidas aquí como las producidas en el extranjero. El legislador escogió no concederle la exención a las gaseosas. Examinemos si esta clasificación descansa sobre una base por existir diferen-

cias que ameriten la clasificación y si la clasificación está relacionada racionalmente con el propósito de promover un fin público permisible. Si la respuesta es en la afirmativa, procede sostener la ley. *Miranda* v. *Sec. de Hacienda,* supra, pág. 179.

La Comisión de Hacienda, en su informe de 27 de enero de 1975 donde recomendó la aprobación del P. de la C. 1313 aclaró que la medida seguía las recomendaciones de la Comisión de Reforma Contributiva. A su entender, la Comisión estudió otros sistemas de arbitrios y escogió éste porque (1) ampliaría la base del sistema impositivo, (2) daría más estabilidad al sistema de recaudos del país, y (3) sería de más fácil y económica administración. A la mencionada Comisión sobre Reforma Contributiva, nombrada a raíz de la Resolución Conjunta Núm. 2 del 20 de enero de 1973, se le encomendó la tarea de preparar un plan para reformar el Sistema Contributivo del Estado Libre Asociado de Puerto Rico. Rindió su Informe Final el 2 de mayo de 1975. Además de los arriba mencionados, enumeró los siguientes objetivos a la pág. 9:

a) Propiciar una distribución justa y equitativa de la carga contributiva.

b) Proveer ingresos del erario en cantidad tal que, en unión a los ingresos y recursos que se puedan obtener de otras fuentes sean suficientes para costear la realización de las aspiraciones fundamentales del pueblo puertorriqueño en un período razonablemente breve.

c) Mantener los incentivos para una vigorosa actividad económica privada, sobre todo en los sectores de particular beneficio para el país, pero con un estricto cuidado de no permitir trato contributivo preferente alguno que no tenga clara justificación en términos de beneficio social.

Ante la aguda necesidad de recursos que existía para el año fiscal de 1975 y 1976, se decidió implantar un

impuesto contributivo de 5% sobre los productos de uso y consumo, exceptuando alimentos y medicinas.

■ El legislador tuvo por objetivo recaudar fondos para el erario en breve tiempo para cumplir los cometidos del gobierno en época de crisis económica y además mantener incentivos económicos sin conceder trato preferente, a menos que resultara en claros beneficios sociales. Quiso, además, propiciar una distribución equitativa de la carga contributiva. La imposición de arbitrios sobre todos los productos de uso y consumo hubiera resultado en una distribución poco equitativa de la carga contributiva. Eso es así porque el arbitrio impuesto sobre los productos tiene el efecto de aumentar los precios. El consumidor de menos ingresos estaría aportando a los fondos del erario público en la misma proporción que el consumidor de mayores ingresos. Por lo tanto, el objetivo de propiciar una distribución equitativa de la carga contributiva (*i.e.* de acuerdo con los ingresos de cada cual) no se cumpliría. Para contrarrestar este efecto, el legislador consideró que debía concederle exención a los productos que consideró eran de consumo esencial. El consumidor de menos ingresos no tendría que aportar lo mismo que el consumidor de mayor ingreso, el cual estaría capacitado para adquirir productos de consumo no esencial, y pagar el precio que incluye el arbitrio. Tradicionalmente la clasificación ha sido un método para ajustar los programas contributivos· a las necesidades y usos locales, a fin de lograr una distribución equitativa en la carga contributiva. *U.S. Brewers Assoc.* v. *Srio. de Hacienda*, supra, pág. 460; *Miranda* v. *Sec. de Hacienda*, supra, pág. 178. Esta medida a su vez cumplía con el objetivo de no dar trato preferente a menos que existiera un claro beneficio social. Ante la urgente necesidad de recaudar fondos en época de crisis económica, fue razonable imponer un arbitrio a los artículos antes no gravados y eximir a los productos que consideraron eran más esenciales para el consumo que otros y que considera-

ron producían un claro beneficio social. El estado de hechos que justifica la ley existía en la realidad económica y social. En *Heisler* v. *Thomas Colliery Co.*, supra, el Tribunal Supremo de Estados Unidos sostuvo la constitucionalidad de un arbitrio impuesto a la producción de carbón antracita, que no se le imponía al carbón bituminoso. El Tribunal sostuvo que las diferencias naturales entre los dos carbones constituían base razonable para crear distintas clasificaciones. En *Sharpe* v. *Standard Oil Company*, 322 So.2d 457 (1975), apelación desestimada 425 U.S. 947 (1976), se sostuvo la constitucionalidad de un impuesto sobre el combustible Diesel, mientras no se le imponía al combustible propano. A la pág. 461 expresó el Tribunal que, aparte del interés que tenía el Estado para cumplir cierta política económica del momento, existía una razón más fundamental para sostener la distinción entre ambos combustibles. Ésta consistía en las diferencias inherentes entre los dos combustibles. Ver además, *Lehnhausen* v. *Lake Shore Auto Parts*, 410 U.S. 356 (1973).

En el caso de autos, las bebidas gaseosas poseen diferencias inherentes en sí, distinguibles de otros alimentos, y la clasificación hecha, por lo tanto, es razonable. No es arbitraria o caprichosa. El legislador no tiene que imponer arbitrios a todos los productos de uso y consumo, como tampoco concederle exención a todos los alimentos.

El hecho de que posteriormente en 1977 se enmendó la Ley nuevamente para concederle la exención a las gaseosas, no puede entenderse, ni presumirse, que se hizo por el hecho de que la clasificación anterior violaba el derecho a la igual protección de las leyes. La presunción de constitucionalidad(3) acompaña a un estatuto y sólo puede desvirtuarse con la más explícita demostración de que una

---

(3) Sobre la presunción de constitucionalidad, véase: Brest, *Process of Constitutional Decision-Making: Cases and Materials*, 1975, págs. 1008–1010.

clasificación es un discrimen hostil y opresivo en contra de ciertas personas o clases. *Buscaglia, Tes.* v. *Tribl. de Contribuciones*, 68 D.P.R. 345, 362 (1948); *Miranda* v. *Sec. de Hacienda*, supra, pág. 181. No puede presumirse, contrario a lo presumido por el tribunal de instancia que los estatutos fueron adoptados arbitrariamente, sin propósito razonable que intentara lograr alguna política pública legítima del Estado, *Allied Stores of Ohio Inc.* v. *Bowers, Tax Comm'r of Ohio*, 358 U.S. 522 (1959). La Legislatura tiene el poder de concederle la exención contributiva que disponga a un producto en un momento histórico dado, a pesar de no haberlo hecho antes. El Informe de la Comisión de Comercio e Industria del P. de la C. 54 que se convirtió en la Ley Núm. 70 de 1977 concedió la exención a las gaseosas y consideró que era de justicia social en ese momento que en la misma medida en que mejorara la situación económica que dio margen a la legislación de emergencia, se volviera a legislar para ir devolviendo a los contribuyentes el valor adquisitivo de sus ingresos por medio de concederle la exención contributiva a otros productos que también podían considerarse de primera necesidad. Así lo estimó la Asamblea Legislativa, todo ello dentro de su poder de imponer contribuciones.

Por lo anteriormente expuesto *se revocará la sentencia apelada.*