CC-2000-496                    1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Café Rico, Inc.<br>        Demandante-recurrido<br><br>             v.<br><br>Municipio de Mayagüez<br>     Demandado-peticionario | Certiorari<br><br>2001 TSPR 148<br><br>155 DPR \_\_\_\_ |

Número del Caso: CC-2000-496


Fecha: 31/octubre/2001


Tribunal de Circuito de Apelaciones:
                         Circuito Regional IV


Juez Ponente:
                  Hon. Jocelyn López Vilanova


Abogado de la Parte Peticionaria:
                  Lcdo. Iván Crespo Arroyo


Abogado de la Parte Recurrida:
                  Lcdo. José Luis Villamil Casanova


Materia: Patentes Municipales


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

**Café Rico, Inc.**

    Demandante-recurrido

    v.                                    CC-2000-496      Certiorari

Municipio de Mayagüez

    Demandado-peticionario

**Opinión del Tribunal emitida por el Juez Asociado señor FUSTER BERLINGERI.**

**San Juan, Puerto Rico, a 31 de octubre de 2001.**

**El recurso ante nuestra consideración plantea la interrogante de si en virtud de la Ley de Incentivos Contributivos Agrícolas, Ley Núm. 225 de 1 de diciembre de 1995, según enmendada, 13 L.P.R.A. sec. 10402 <u>et</u> <u>seq</u>., un contribuyente que se dedica a la torrefacción de café está exento del pago de patentes municipales para los años fiscales de 1996-97 y 1997-98.**

I

**Café Rico Inc. (en adelante Café Rico) es una corporación organizada bajo las leyes del Estado Libre Asociado de Puerto Rico. Conforme a una certificación emitida el 16 de mayo de 1996 por el**

Departamento de Agricultura del Estado Libre Asociado de Puerto Rico, Café Rico es un "agricultor *bona fide*" que se dedica a la torrefacción de café. Véase Artículo 3(a) de la Ley de Incentivos Contributivos Agrícolas, supra, 13 L.P.R.A. sec. 10402(a). El año de contabilidad de Café Rico comienza el 1 de octubre de un año y termina el 30 de septiembre del próximo año.

El 15 de septiembre de 1997 el Municipio de Mayagüez (en adelante el Municipio) le notificó a Café Rico una deficiencia de $36,466 en el pago de patentes municipales correspondientes a los años fiscales de 1996-97 y 1997-98. Actuó así por entender que no le aplicaban a esos años la exención contributiva dispuesta por la Ley de Incentivos Contributivos Agrícolas. Café Rico solicitó la reconsideración de la deficiencia, así como la celebración de una vista administrativa. Luego del procedimiento administrativo, el 9 de febrero de 1998 el Municipio le notificó a Café Rico la determinación final sobre deficiencia contributiva, que ascendía a $37,547 incluyendo intereses y recargos adicionales.

El 10 de marzo de 1998 Café Rico instó una demanda en el Tribunal de Primera Instancia, Sala Superior de Mayagüez, para impugnar la determinación final de deficiencia contributiva para los años antes mencionados. Luego de varios trámites procesales, ambas partes solicitaron que se dictara sentencia en forma sumaria. El 28 de abril de 1999 el Tribunal de Primera Instancia dictó una sentencia sumaria a favor de Café Rico,

y declaró con lugar la demanda de impugnación de notificación de deficiencia contributiva incoada por éste. El Tribunal entendió que la Ley de Patentes Municipales, 21 L.P.R.A. secs. 651 et seq, dispone que las patentes se pagan por anticipado cada semestre del año económico aunque el punto de referencia sea el año anterior. Por ello el Tribunal concluyó que, en virtud de la Ley de Incentivos Contributivos Agrícolas, supra, Café Rico estaba exento del pago de patentes municipales para los años fiscales de 1996-97 y 1997-98.

Inconforme con el referido dictamen del foro de instancia, el Municipio presentó un recurso de apelación ante el Tribunal de Circuito de Apelaciones. El 28 de abril de 2000 el foro apelativo dictó una sentencia y confirmó el dictamen del Tribunal de Primera Instancia. Oportunamente, el Municipio acudió antes nos y señaló que:

Erró el Tribunal de Circuito de Apelaciones en lo siguiente:

1. Al establecer que el Apelante confunde la manera en que se pagan las contribuciones sobre ingresos y las patentes municipales.
2. Al establecer que el pago de las patentes municipales que cubren los años fiscales 1996-97 y 1997-98 corresponden a períodos contributivos comenzados después del 1 de enero de 1996.
3. Al concluir que la patente es un tributo que se paga por adelantado y que esa es la razón por la cual no se cobrará patentes alguna a negocios o industria en los semestres subsiguientes a aquél en que cesare de operar.
4. Al señalar que el término "año económico", según definido en la Ley de Patentes Municipales, se refiere al año fiscal de gobierno que comienza el 1 de julio y termina el 30 de junio del año subsiguiente.
5. Al concluir que el Municipio de Mayagüez no puede requerirle al demandante, Café Rico, Inc. el pago de patentes municipales correspondientes a los años fiscales 1996-97 y 1997-98 toda vez que éstos años se iniciaron con posterioridad al 1 de enero de 1996

y que la Ley de Incentivos Contributivos Agrícolas de 1 de diciembre de 1995 los exime de dicho pago.

El 18 de julio de 2000 expedimos el recurso. El 22 de noviembre de 2000 el Municipio nos solicitó que se le permitiera someter el asunto sin presentar alegato alguno, a lo que accedimos el 14 de diciembre de 2000. El 16 de enero de 2001 Café Rico presentó su alegato, por lo que nos encontramos en posición de resolver.

II

De conformidad con nuestro ordenamiento constitucional la facultad para imponer contribuciones compete primordialmente a la Rama Legislativa. Constitución del Estado Libre Asociado de Puerto Rico, Art. VI, sec. 2. Esa autoridad contributiva es fundamental a la vida del Estado y por lo tanto el poder fiscal gubernamental es constitucionalmente de naturaleza amplia y abarcadora. Continental Insurance Company v. Secretario de Hacienda, res. el 7 de mayo de 2001, ___ D.P.R ___, 2001 TSPR ___, 2001 JTS 71; F.D.I.C. v. Mun. de San Juan, 134 D.P.R. 385 (1993); Coca- Cola Bottling v. Srio. de Hacienda, 112 D.P.R. 707 (1982); U.S. Brewers Association v. Srio de Hacienda, 109 D.P.R. 456 (1980); RCA v. Gobierno de la Capital, 91 D.P.R.416 (1964); Miranda v. Srio. de Hacienda, 77 D.P.R. 171 (1961).

Nuestra Constitución también le confiere al poder legislativo la autoridad para "crear, suprimir, consolidar y reorganizar municipios, modificar sus límites territoriales

y determinar lo relativo a su régimen y función...." Constitución del Estado Libre Asociado, Art. VI, sec. 1; F.D.I.C. v. Mun. de San Juan, supra ; Colón v. Municipio de Guayama, 114 D.P.R. 193 (1983). Aunque los municipios no tienen facultad propia para imponer contribuciones, al amparo de los poderes antes citados, la Asamblea Legislativa mediante mandato claro y expreso puede delegar en éstos la autoridad para imponer y cobrar contribuciones, derechos, arbitrios e impuestos razonables dentro de sus límites territoriales y sobre materias no incompatibles con la tributación impuesta por el Estado. F.D.I.C. v. Mun. de San Juan, supra ; American Express Co. v. Mun. de San Juan, 120 D.P.R. 339, 345 (1988).

En Puerto Rico se favorece una interpretación amplia del poder impositivo delegado a los municipios. Tal interpretación responde a una filosofía que tiende a conceder mayores poderes tributarios a los municipios de forma que puedan proveer más servicios directos a sus ciudadanos. First Bank de P.R. v. Mun. de Aguadilla, supra; Lever Bros. Export Corp. v. Alcalde de San Juan 140 D.P.R. 152 (1996); F.D.I.C. v. Mun. de San Juan, supra.

En efecto, la Ley de Municipios Autónomos dispone que "[l]os poderes y facultades conferidos a los municipios [...] se interpretarán liberalmente [...]de forma tal que se propicie el desarrollo e implantación de la política pública enunciada en este subtítulo de garantizar a los municipios [las] facultades necesarias en el orden jurídico, fiscal y administrativo". 21 L.P.R.A. sec. 4002; First Bank de P.R. v.

**Mun. de Aguadilla**, <u>supra</u>. **Hemos resuelto anteriormente que los impuestos municipales** "**responden a la premisa de que los negocios sitos en su territorio se benefician de la organización local para efectuar sus actividades de interés pecuniario y, por tal razón, contribuyen al sostenimiento de la misma**". **Id**; <u>Banco Popular v. Mun. de Mayagüez</u>, **120 D.P.R. 692,700 (1988). A estos efectos, la sección 3 de la Ley de Patentes Municipales autoriza a las asambleas municipales de todos los municipios de nuestra Isla a imponer y cobrar patentes. 21 L.P.R.A. sec. 651b. Véase <u>First Bank de P.R. v. Mun. de Aguadilla</u>, res. el 17 de enero de 2001, 153 D.P.R.\_\_\_\_, 2001 TSPR 6, 2001 JTS 9. La Ley de Patentes Municipales, <u>supra</u>, establece en su sección 651(f)(a), cómo se realiza el cómputo de la patente:**

> **La patente impuesta por autorización de las secs. 651 et seq. de este título** será computada por la persona sujeta a patente tomando como base el volumen de negocios realizado durante su año de contabilidad terminado dentro del año calendario inmediatamente anterior. **El año de contabilidad debe ser igual al utilizado para preparar y rendir la planilla de contribución sobre ingresos al Departamento de Hacienda. Si no rinde dicha planilla de contribución sobre ingresos, entonces el año de contabilidad será el año natural. ....(Énfasis suplido)**

La sección 651(j) dispone sobre el método de pago de las patentes municipales:

> **Toda persona sujeta al pago de patente que impone este Capítulo pagará a los recaudadores oficiales de los municipios en que radiquen sus negocios o industrias la patente que autoriza imponer dichas secciones.** Dicha patente se pagará por anticipado dentro de los primeros quince (15) días de cada semestre del año económico, tomando como base el volumen de negocios efectuado durante el año inmediatamente anterior, **según se dispone en la sec.651f de este título, excepto en casos de nuevas industrias o negocios que se pagará,**

según lo dispuesto en la sección 651 l de este título.... (Énfasis suplido)

Por otro lado, la sección 651a en su inciso diez (10) **define** año de contabilidad **como [] el año natural, o año económico terminado dentro de dicho año natural sobre cuya base se determina el volumen de negocios bajo la secs. 651 a 652y de este título o bajo los reglamentos este término significa el período por el cual se rinde la declaración. También, en el inciso once (11) se define** año económico **como un período de contabilidad de doce (12) meses terminado en el último día de cualquier mes que no sea diciembre.**

**La Ley de Incentivos Contributivos Agrícolas tiene el propósito de declarar como política pública del Estado Libre Asociado de Puerto Rico el dar prioridad a la agricultura en toda gestión del gobierno, los municipios y sus instrumentalidades mediante el alivio del pago de contribuciones.[1] Mediante el artículo 9 de la referida Ley, el legislador eximió del pago de patentes municipales a todos aquellos agricultores** bona fide**. A esos fines establece el artículo lo siguiente:**

> Para los años contributivos comenzados a partir del 1ro de enero de 1996 se exime a los agricultores bona fide del pago de toda clase de patentes, **cargos, e imposiciones municipales sobre sus negocios de actividad agrícola intensiva.**
> **En el caso de agricultores o agroempresarios nuevos se regirán por lo dispuesto en la sec. 10404a de este título.[2]**

---

[1] 13 L.P.R.A. sec. 10401.
[2] 13 L.P.R.A. sec. 10407.

A la luz de los principios antes reseñados, la cuestión ante nos se reduce esencialmente a determinar si para los años fiscales de 1996-97 y 1997-98, para los cuales se han notificado deficiencias contributivas, aplica la exención sobre patentes municipales que establece la Ley de Incentivos Contributivos Agrícolas, *supra*, para agricultores *bona fide*. De esta manera tenemos la oportunidad de analizar cómo interactúan dos legislaciones contributivas, la Ley de Patentes Municipales, *supra*, y la Ley de Incentivos Contributivos Agrícolas, *supra*.

III

Por estar todos los señalamientos de error íntimamente relacionados procederemos a discutirlos en forma conjunta.

El contribuyente, en este caso, tiene un año de contabilidad irregular que comienza el 1 de octubre de un año y termina el 30 de septiembre del próximo año. El Municipio le ha notificado al demandante deficiencias de patentes municipales para sus años contributivos o contables terminados el 30 de septiembre de 1995 y el 30 de septiembre de 1996, correspondientes a los años fiscales 1996-97 y 1997-98. El Municipio alega que ambos años contables o contributivos comenzaron antes del 1 de enero de 1996 por lo que no les aplica la exención contributiva de la Ley de Incentivos Contributivos Agrícolas, *supra*. El Municipio se basa en que las patentes son contribuciones sobre el volumen de negocio de un año de operaciones anterior al que se informan y pagan, también anterior al año fiscal en que lo utiliza el Municipio.

Por otro lado, **Café Rico** alega que está exento del pago de patentes municipales desde el 1 de enero de 1996, y por consiguiente exento del pago de patentes correspondientes a los años fiscales de 1996-97 y 1997-98, de acuerdo con lo preceptuado en el Artículo 9 de la Ley de Incentivos Contributivos Agrícolas, <u>supra</u>.

La Ley de Patentes Municipales, <u>supra</u>, define patente como la contribución impuesta y cobrada por un municipio bajo las disposiciones que establece la Ley, a toda persona dedicada con fines de lucro a la prestación de cualquier servicio, a la venta de cualquier bien, a cualquier negocio financiero o negocio en los municipios del Estado Libre Asociado de Puerto Rico. Véase Ley de Patentes Municipales, <u>supra</u>, 21 L.P.R.A. sec.651a (16). Toda persona sujeta al pago de patente está obligada a rendir una declaración de volumen de negocio según se dispone en la Ley de Patentes Municipales en o antes de los cinco días laborables siguientes al 15 de abril de cada año. Véase 21 L.P.R.A. sec. 651i(a)(1). Como señaláramos anteriormente, la patente se computa tomando como base el volumen de negocios realizado durante el año de contabilidad terminado dentro del año calendario inmediatamente anterior a la fecha que se rinde la declaración.[3] Dicha patente se pagará por anticipado dentro de los primeros quince (15) días de cada semestre del año económico, tomando como base el volumen de

---

[3] En aquellos casos en que una persona no hubiese llevado a cabo industria o negocio durante todo el año natural o económico inmediatamente anterior, la patente será computada tomando como base el volumen de negocios realizado durante el período en que

negocios efectuado durante el año anterior. Por ello, el pago de patentes municipales vence en plazos semestrales, el 1 de julio y el 2 de enero de cada año. Véase Ley de Patentes Municipales, supra, 21 L.P.R.A. sec. 651j.

De un examen de las copias de las Planillas de Declaración de Volumen de Negocio que obran en el expediente del caso de autos surge claramente que los años contributivos que Café Rico está informando y pagando para los años fiscales de 1996-97 y 1997-98 son los años comenzados el 1 de octubre de 1994 y el 1 de octubre de 1995, y terminados el 30 de septiembre de 1995 y el 30 de septiembre de 1996 respectivamente. Para el año contributivo finalizado el 30 de septiembre de 1995, el contribuyente debió radicar su declaración de volumen de negocio en abril de 1996, y realizar los pagos por adelantado el 1 de julio de 1996 y el 2 de enero de 1997. El Municipio utilizaría el pago de esas patentes para su año fiscal de 1996-97. Para el año contributivo terminado el 30 de septiembre de 1996, el contribuyente debió radicar su declaración en abril de 1997, y realizar los pagos por adelantado el 1 de julio de 1997 y 2 de enero de 1998. Así mismo, el Municipio utilizaría el pago de esas patentes para su año fiscal de 1997-98. Los pagos de patentes municipales se realizan por adelantado, en el sentido de que se efectúa el pago al principio de cada semestre del año fiscal del Municipio. Esto no convierte el año fiscal del Municipio en el año contributivo para propósito de las patentes municipales y del contribuyente. Un análisis

_____

llevo a cabo industria o negocio, elevando dicho volumen a una

integral de todas las disposiciones referidas de la Ley de Patentes Municipales, supra, y de su historial legislativo nos llevan a tal conclusión. Conforme a lo anterior, es claro que ambos años contributivos en cuestión comenzaron antes del 1 de enero de 1996, por lo que no los cobija la exención que establece el Art.9 de la Ley de Incentivos Contributivos Agrícolas.

La de Ley Incentivos Contributivos Agrícolas establece claramente que la exención concedida a agricultores *bona fide* es para los años contributivos comenzados a partir del 1 de enero de 1996. La exención aplicada a Café Rico se extiende a partir del año contributivo o contable comenzado el 1 de octubre de 1996 y terminado el 30 de septiembre de 1997. Dicho año contributivo se tributaría en el Municipio para el año fiscal de 1998-99.

Erraron tanto el Tribunal de Primera Instancia como el Tribunal de Circuito de Apelaciones al confundir y aplicar los términos año contributivo y año fiscal bajo la Ley de Patentes Municipales, supra. No podemos concluir que los años fiscales 1996-97 y 1997-98 del Municipio son los años contributivos del contribuyente y que los mismos están exentos bajo la Ley de Incentivos Contributivos Agrícolas, porque corresponden a períodos contributivos comenzados después del 1 de enero de 1996. El año contributivo para el que se impone el pago de las patentes municipales es el año de operaciones o de contabilidad del contribuyente. Dicho año contributivo puede ser el año

base anual.

natural que termina el 31 de diciembre, como también puede ser un año económico, el cual es un período de contabilidad de doce meses terminado el último día de cualquier mes que no sea diciembre. Véase Ley de Patentes Municipales, supra, 21 L.P.R.A. sec.651a. Es a base de ese año que se determina el volumen de negocio para el año contributivo que se informa en la declaración.

El propósito del legislador al aprobar la Ley de Patentes Municipales, supra, fue el proveer un mecanismo a los municipios para generar ingresos y fortalecerlos económicamente para que cumplan sus funciones en beneficio y para el bienestar general de todos los habitantes de su jurisdicción. F.D.I.C. v. Mun. de San Juan, supra. Tomando dicho propósito en consideración, debemos interpretar correspondientemente la exención de patentes municipales que establece la Ley de Incentivos Contributivos Agrícolas para los "agricultores bona fide". Reconocemos la importancia de los incentivos contributivos para el desarrollo de nuestra agricultura, pero no podemos obviar que una de las principales fuentes de ingreso de los municipios lo constituyen las patentes municipales. Antes hemos señalado que un tribunal no debe interpretar la legislación contributiva en forma extensiva, sino que debe interpretarla en forma justa a tenor con sus propios y expresos términos. Continental Insurance Company v. Secretario de Hacienda, supra; Tall Cott Interamerican Corp. v. Registrador, 104 D.P.R. 254 (1975). Además, las exenciones contributivas, por ser privilegios

excepcionales que concede el Estado, no deben extenderse más allá de los términos expresos y exactos del estatuto que las otorga y toda duda debe resolverse en contra de la existencia de la exención, como lo hemos hecho aquí. Véase <u>Texas Co. (P.R.) Inc. v. Tribl. De Contribuciones</u>, 82 D.P.R. 134,161 (1961); <u>Cía. Ferroviaria v. Secretario de Hacienda</u>, 80 D.P.R. 524 (1958); <u>Francis v. Tribunal de Contribuciones y Tesorero</u>, 74 D.P.R. 19 (1952).

## IV

Por lo anterior, procede la notificación de deficiencias contributivas, en el caso de autos, por la cantidad de $37,547 por concepto de patentes municipales para los años fiscales de 1996-97 y 1997-98

Por los fundamentos antes expuestos, deben revocarse las sentencias dictadas, en el caso de autos, por el Tribunal de Circuito de Apelaciones y el Tribunal de Primera Instancia, Sala Superior de Mayagüez.

Se dictara sentencia de conformidad.


JAIME B.FUSTER BERLINGERI
JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


**Café Rico, Inc.**

    Demandante-recurrido

     v.                      CC-2000-496     Certiorari

Municipio de Mayagüez

    Demandado-peticionario


**SENTENCIA**


**San Juan, Puerto Rico, a 31 de octubre de 2001.**


     **Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revocan las sentencias dictadas, en el caso de autos, por el Tribunal de Circuito de Apelaciones y el Tribunal de Primera Instancia, Sala Superior de Mayagüez.**

     **Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.  El Juez Asociado señor Hernández Denton concurre con el resultado sin opinión escrita.**


                    **Isabel Llompart Zeno**
           **Secretaria del Tribunal Supremo**