Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel II

| | | |
|---|---|---|
| CARRO & CARRO ENTERPRISES, INC.<br><br>Apelantes<br><br>v.<br><br>MUNICIPIO DE LAS MARÍAS<br>Apelada | KLAN202400090 | Apelación procedente del Tribunal de Primera Instancia, Sala de Mayagüez<br><br>Caso Núm. LM2023CV00012<br><br>Sobre:<br>Arbitrios de Construcción |

Panel integrado por su presidente, el Juez Bermúdez Torres, el Juez Adames Soto y la Jueza Aldebol Mora

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de mayo de 2024.

Comparece ante nosotros Carro & Carro Enterprises, Inc. (CCE o apelante) mediante escrito de apelación. Solicita que revisemos una *Sentencia* del Tribunal de Primera Instancia, Sala Superior de Mayagüez (TPI) del 30 de agosto de 2023,[1] en la cual desestimó la *Demanda* sobre imposición de árbitros de construcción en contra del Municipio de Las Marías (Municipio o apelado).

Por los fundamentos que expondremos a continuación, se confirma la Sentencia apelada.

**I. Resumen del tracto procesal**

El 27 de febrero de 2023, CCE incoó una *Demanda* sobre revisión judicial de arbitrios de construcción contra el Municipio. Adujo que el 30 de agosto de 2022 la Autoridad de Carreteras y Transportación (ACT) adjudicó la buena pro a CCE de la subasta pública para el proyecto de *Subasta Formal P-22-19, Proyecto Federal ZP-4119(3), AC-411901,*

---

[1] Notificada el 1 de septiembre de 2023.

NÚMERO IDENTIFICADOR

SEN2024_____

*S004119001, construcción de carretera PR-4119, conector desde PR-119 hasta calle Ramon Rivera, Las Marías.* Asimismo, CCE manifestó que el monto de la subasta ascendió a $18,320,000.00. También, indicó que al momento de adjudicarse la subasta estaba vigente la Ordenanza Núm. 1 del 9 de julio de 2020, la cual establecía que el arbitrio de construcción a ser pagado al Municipio era de un 10% del costo total de la obra tomando el valor fijado en la adjudicación de la subasta por la entidad gubernamental contratante.

En su demanda, CCE arguyó que el 26 de diciembre de 2022, le envió una carta al Municipio con la *Declaración de actividad detallada para el cómputo de pago de arbitrios de construcción,* según requerido por el Artículo 2.110 (a) del *Código Municipal de Puerto Rico,* Ley 107-2020, (Código Municipal), 21 LPRA sec. 7332. El apelante sostuvo que mediante la referida declaración presentó un desglose de las partidas que no estaban sujetas al arbitrio municipal. Cónsono con lo anterior, informó que el total de partidas susceptibles al arbitrio municipal ascendía a $7,970,904.89, por lo que el 10% correspondiente a los arbitrios de construcción era $797,090.49. El cálculo estuvo basado en la interpretación del caso *ECA Contractors v. Municipio de Mayagüez*, 200 DPR 665 (2018).

Así las cosas, CCE esgrimió que el 6 de febrero de 2023,[2] 42 días después de haber enviado la carta, el Municipio contestó y rechazó el valor de la obra declarado por el apelante, reconociendo únicamente las siguientes deducciones: (1) $18,320.00 por concepto de sellos del Colegio de Ingenieros y Agrimensores de Puerto Rico (CIAPR) y $50,000.00 por los planos y dibujos de taller (*shop drawings*). Asimismo, sostuvo que las deducciones de las siguientes partidas estarían sujetas a la presentación de evidencia: (1) $740,000.00 por permisos; (2) $100,000.00 por servicios legales; (3) $79,500.00 por servicios de consultoría técnica; y (4) $160,000.00 por estudios ambientales, para lo cual solicitó evidencia del

---

[2] Notificada el 7 de febrero de 2023.

gasto. El total de estas últimas deducciones ascendía a $1,079,500.00. Por lo cual, el apelado concluyó que el monto a pagar por concepto de arbitrios sería la cantidad de $1,825,168.00 o, si se presentaba la evidencia correspondiente, $1,717.218.00.

En vista de lo anterior, CCE alegó que el 16 de febrero de 2023 se reunió con representantes del Municipio para explicarle las razones por las cuales difería con ellos en cuanto al monto a pagar por arbitrios. A raíz de lo anterior, CCE esgrimió que, a solicitud del Municipio, el 22 de febrero de 2023, presentó una carta detallando las razones por las cuales la postura del Municipio no era cónsona con el Código Municipal ni con lo dispuesto en *ECA Contractors v. Municipio de Mayagüez,* supra. Además, junto a la carta, CCE acompañó una declaración revisada de actividad detallada para el cómputo de pago de arbitrios de construcción, ascendiente a $960,270.21, que representaba un aumento de casi un 20% de la declaración original.

En estas circunstancias, el apelante argumentó que el Municipio incumplió con el término de 15 días improrrogables dispuesto por ley para rechazar el valor estimado por el contribuyente y, por lo tanto, dicho incumplimiento tuvo el efecto de aceptar la determinación original sometida por el CCE y de privar de jurisdicción al Municipio. Por otro lado, indicó que el apelado pretendía imponer el pago de arbitrios municipales por partidas que no forman parte de la actividad de construcción en contravención a lo resuelto en *ECA v. Municipio de Mayagüez,* supra. Finalmente, CCE solicitó que se revocara la determinación del Municipio referente al impuesto de arbitrios de construcción y se aceptara como costo total de la obra sujeto a arbitrios, la suma estimada por el apelante el 26 de diciembre de 2022.

En vista de lo anterior, el 15 de mayo de 2023,[3] el Municipio presentó una *Solicitud de Desestimación* amparada en la Regla 10.2 de

---

[3] Notificada el 16 de mayo de 2023.

Procedimiento Civil 32 LPRA Ap. V, R. 10.2, bajo el fundamento de que la demanda no exponía una reclamación que justificara la concesión de un remedio. Indicó que los arbitrios de construcción se computaban basándose en el monto total del contrato de construcción. Acorde con ello, el Municipio explicó que la Ley Núm. 50 de 2018 (Ley 50-2018) enmendó el Artículo 2.002 de la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991 (Ley de Municipios Autónomos), 21 LPRA sec. 4052 (d), y a raíz de dicha enmienda se determinó que el costo total de la obra será el valor que se toma en cuenta en la adjudicación de la subasta por la agencia contratante y que no se iba a permitir ninguna deducción que no esté expresamente aprobada por ley. Asimismo, manifestó que la enmienda fue reafirmada con la aprobación de la Ley 107 de 14 de agosto de 2020, según enmendada, conocida como el "Código Municipal de Puerto Rico" (Ley Núm. 107-2020). Consecuentemente, el apelado distinguió la controversia de epígrafe del caso *ECA v. Municipio de Mayagüez,* supra, resuelto bajo la legislación anterior. Ante ello, sostuvo que la Ley de Municipios Autónomos, *supra,* y la jurisprudencia interpretativa citada por CCE para sostener sus alegaciones eran inaplicables al caso.

En respuesta, el 5 de junio de 2023, CCE presentó *Moción en oposición a solicitud de desestimación.* En esencia, el apelante sostuvo que el Municipio no controvirtió la alegación de CCE en cuanto a la falta de jurisdicción para revisar la declaración del demandante. Por lo cual, argumentó que el Municipio se allanó a la alegación presentada por CCE.

Respecto al cómputo de arbitrios de construcción, el apelante esgrimió que la Ley Núm. 107-2020, *supra,* permite deducir partidas atribuibles a actividades que no constituyen construcción. Finalmente, el apelante manifestó que no procedía la desestimación al amparo de la Regla 10.2 de Procedimiento Civil, *supra,* y que el foro primario no tenía ante sí controversias de hechos que le impidieran resolver sumariamente a favor de CCE.

En atención a lo anterior, el 22 de junio de 2023, el TPI emitió *Orden* indicando lo siguiente:

Examinada la Moción de Desestimación y su correspondiente Moción en Oposición, surge que la parte demandante en su oposición solicita que este Tribunal resuelva la controversia mediante el mecanismo de Sentencia Sumaria pues alega que no hay controversia de hechos y hace referencia a los documentos anejados en su demanda. Además, alega falta de jurisdicción del Municipio. **Siendo ello así, se concede el término de 20 días a la parte demandada Municipio de Las Mar[í]as para que exponga su posici[ó]n en torno a esta solicitud de Sentencia Sumaria.**

En el interín, el 27 de junio de 2023, CCE presentó *Moción de Consignación.* El apelante presentó copia del cheque de gerente número 220666208 a nombre del Secretario del Tribunal por la cantidad de $797,090.49 y solicitó que el TPI aceptara la consignación presentada y determinara que dicho pago satisfacía los arbitrios de construcción en cuestión. El 11 de julio de 2023,[4] el foro primario emitió *Resolución* autorizando la consignación. También, el TPI aclaró que la controversia planteada estaba pendiente de adjudicación.

Entonces, el 11 de junio de 2023, el Municipio presentó *Escrito en cumplimiento de Orden en réplica a Moción en oposición a solicitud de desestimación y en oposición a solicitud de sentencia sumaria de la parte demandante.* En síntesis, el apelado indicó que el Código Municipal, *supra,* les confirió a los municipios la facultad para imponer arbitrios de construcción. Asimismo, afirmó que del Art. 1.007 de la Ley Núm. 107-2020, *supra,* se desprende que *no se eximirá total ni parcialmente, ni se prorrogará el pago de las contribuciones, patentes y tasas municipales a persona natural o jurídica alguna, salvo que por este Código o por ley se disponga o autorice expresamente tal exención, o se autorice tal prórroga mediante ordenanza al efecto.*

De la misma manera, el Municipio adujo que la Ley Núm. 107-2020, *supra,* establece claramente que el costo total de la obra será el valor tomado en cuenta para calcular el arbitrio de construcción. En

---

[4] Notificada el 12 de julio de 2023.

consonancia, explicó que las únicas deducciones permisibles son las enumeradas a saber: *el costo de adquisición de terrenos, edificaciones ya construidas y enclavadas en lugar de la obra, costos de estudios, diseños de planos, permisos, consultoría y servicios legales.* Cónsono con lo anterior, el Municipio argumentó que en el caso de epígrafe no hay adquisiciones de terreno, ni edificaciones ya construidas y enclavadas en el lugar de la obra, ni costos de estudios, ni diseños de planos y permisos, ni la deducción de servicios legales o consultoría, debido a que estos servicios fueron realizados por la ACT. Acorde con lo informado, arguyó que la única deducción que se pudiese aplicar a CCE es la de los costos del Permiso Único Incidental. Sin embargo, la referida deducción tendría que ser evidenciada para que procediera. Conjuntamente, esbozó que CCE pretendía reclamar deducciones por interpretación, contrario a lo que dispone la ley, y que también estaba inflando las partidas.

En cuanto a la alegada falta de jurisdicción, el apelado explicó que el 26 de diciembre de 2022, cuando presuntamente se presentó la *Declaración de Actividad Detallada,* el Municipio se encontraba en cierre por vacaciones de navidad y que fue el 9 de enero de 2023 cuando comenzó a operar. Subsiguientemente, el apelado señaló que la carta se respondió el 6 de febrero de 2023, 19 días laborables después de haber reanudado las operaciones en el Municipio. No obstante, planteó que la declaración no fue presentada en la Oficina del Directos de Finanzas, en incumplimiento con las disposiciones de la ley. Acorde con lo anterior, el apelado razonó que los términos para responder la declaración de actividad detallada comienzan a transcurrir una vez se entrega en la Oficina de Finanzas y no en otra dependencia municipal. De esta manera, concluyó que el apelante no puede reclamar incumplimiento con un plazo que no comenzó a transcurrir, puesto que se incumplió con el Art. 2.110 de la Ley Núm. 107-2020, *supra.*

Por otro lado, el apelado aseveró que el 22 de febrero de 2023, CCE presentó una segunda *Declaración de actividad detallada* en donde el apelante realizó otro cálculo con relación a los arbitrios a pagar. Sobre lo anterior, el Municipio razonó que la segunda declaración implicaba una admisión del apelante de que la primera declaración no era correcta y que, a partir de la segunda declaración, los términos comenzaron a decursar. Por último, sostuvo que 5 días después de presentarse la segunda declaración el apelante presentó la *Demanda,* por lo cual, los términos quedaron interrumpidos.

Atendidos los escritos de las partes, el 30 de agosto de 2023,[5] el TPI emitió *Sentencia* desestimando la *Demanda* presentada por CCE. El foro primario realizó las siguientes determinaciones de hechos:

1. CEE es el contratista general de la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") para el proyecto de Subasta Formal P-22-19, Proyecto Federal ZP-4119(3), AC-411901, S004119001, Construcción de Carretera PR-4119, Conector desde PR_119 hasta Calle Ramon Rivera, Las Marías, por un monto de $18,320,000.00.
2. El proyecto ubica en su totalidad dentro de los límites territoriales del Municipio de Las Marías.
3. El 9 de enero de 2023 CEE presentó una primera Declaración de Actividad Detallada donde la suma de arbitrios a pagar era por la cantidad de $7,970,904.89, o sea, descontándose por alegadas deducciones la cantidad de $10,349,095.11 del monto total del proyecto. Como resultado de esto calculó la [suma] sujeta al pago de arbitrios por la cantidad de $797,090.49. Esta declaración no fue presentada al Director de Finanzas conforme lo requiere el Artículo 2.110 de la Ley 107-2020, según enmendada.
4. Mediante carta del 6 de febrero de 2023 el Municipio le notificó el pago a base del total del contrato de $18,320,000.00 aplicándole, de conformidad con la Ordenanza municipal vigente el tipo contributivo para estos proyectos de un 10.0%, lo que equivale a un pago de $1,832,000.00, y luego de deducirle las deducciones permitidas por Ley: Sellos del CIAPR ($18,320.00) y Planos y Shop Drawings ($50,000.00), para una deducción total de $68,320.00 (sujeta a la muestra de evidencias), el monto total a pagar por concepto de arbitrios de $1,825,168.00.
5. El 22 de febrero de 2023 CEE presentó una segunda Declaración de Actividad Detallada donde la suma de arbitrios a pagar era por la cantidad de $9,602,702.73 o sea, descontándose por alegadas deducciones la cantidad de $8,717,297.27. Como resultado de esto calculó la suma sujeta al pago de arbitrios aumentó la cantidad de $960,270.27.
6. El 27 de febrero de 2023 CEE presentó su demanda solicitando la Revisión Judicial en este caso.

---
[5] Notificada el 1 de septiembre de 2023.

7. Las partidas que CEE descontó en su Primera Declaración de Actividad Detallada, la cual es la que reclama en la Demanda, son:

| Descripción | Monto |
| --- | --- |
| Municipal Tax | $797,090.49 |
| Municipal Licenses | $91,600.00 |
| Excices Taxes | $556,100.62 |
| Stamp CIAPR | $18,320.00 |
| Isurances | $686,000.00 |
| Security Services | $432,000.00 |
| Surveyiong Services | $150,000.00 |
| Permitts | $740,000.00 |
| Profits | $2,748,000.00 |
| Plans and Shop Drawings | $50,000.00 |
| Legal Services | $100,000.00 |
| Geotechnical and Structural Consulting Services | $79,500.00 |
| Administrative Project Office Expenses | $575,664.00 |
| Administrative Main Office Expenses | $916,000.00 |
| Financing Expenses | $1,000,000.00 |
| Equipment Transportation and Acquisition | $500,000.00 |
| Environmental Studies | $160,000.00 |
| Test Piles | $570,000.00 |
| Temporary Constructive Services | $60,000.00 |
| Temporary Staging Area | $391,520.00 |
| Total de deducciones reclamadas por CEE | $10,349,095.11 |

8. Las partidas que CEE descontó en su Segunda Declaración de Actividad Detallada, la cual se reclama en la Demanda, son:

| Descripción | Monto |
|---|---|
| Municipal Tax | $960,270.27 |
| Stamp CIAPR | $18,320.00 |
| Public Liability Insurance | $146,560.00 |
| Workman Compensation Insurance | $293,120.00 |
| Payment & Performance Bonds | $126,889.00 |
| Permiso de Desperdicios Sólidos | $10,000.00 |
| Fish & Wild Monitoring Permits | $168,000.00 |
| Permiso Control de Erosión-CES Plan | $352,400.00 |
| NPP Permiso Federal Contaminación de Aguas | $15,000.00 |
| Permiso DRNA Corte, transplante y mant. árboles | $10,800.00 |
| Geotechnicals Studies Instrumentation Inclinometer | $50,000.00 |
| Geotechnicals Studies Instrumentation Piezqometer | $25,000.00 |
| Geotechnicals Studies Instrumentation Settlement Gages | $4,500.00 |
| Temporary PRHTA Field Office | $150,000.00 |
| Geotechnicals Test Piles | $570,000.00 |
| Allowance for PREPA | $30,000.00 |
| Allowance for PRASA | $30,000.00 |
| Plans & Shop Drawings | $50,000.00 |
| Legal Services | $100,000.00 |
| Administrative Project Office Expenses | $575,664.00 |
| Administrative Main Office Expenses | $916,000.00 |
| Financing Expenses | $100,000.00 |
| Equipment Transportation and Adquisition | $500,000.00 |
| Temporary Construction Sign | $10,500.00 |
| Temporary Drums | $50,000.00 |
| Temporary Concrete Barriers | $137,500.00 |

| | |
|---|---|
| Temporary Traffic Screen | $68,750.00 |
| Temporary Project Funding Sign | $50,000.00 |
| Scheduling Services | $60,000.00 |
| Temporary Office Supplies | $20,000.00 |
| Ports let | $20,000.00 |
| Hielo | $24,000.00 |
| Temporary Telephone Services | $20,000.00 |
| Safety Plan | $50,000.00 |
| Alojo Temporero de Personal Administrativo | $90,000.00 |
| Profits | $2,748,000.00 |
| Total de deducciones reclamadas por CEE | $8,717,297.27 |

9. El monto total de las deducciones hechas por CEE en la Primera Declaración es de $10,349,095.11 y el monto total de las deducciones hechas por CEE en la Segunda Declaración es de $8,717,297.27. Las partidas deducidas por CEE en estas Declaraciones son esencialmente las mismas partidas que el Tribunal Supremo de Puerto Rico confirmó en *ECA General Contractors, Inc. v. Municipio Autónomo de Mayagüez,* supra, que no son actividad de construcción y que son partidas sobre las cuales un municipio no puede cobrar arbitrios de construcción.

10. El 24 de enero de 2018 la Asamblea Legislativa de Puerto Rico mediante la Ley 50-2018 enmendó el Artículo 2.002 (d) y eliminó expresamente las deducciones antes otorgadas por disposición de ley.

11. El 14 de agosto de 2020 se aprobó la Ley Núm. 107 de 2020, según enmendada, conocida como el "Código Municipal de Puerto Rico".

12. La tasa de arbitrio de construcción aplicable al Proyecto en el Municipio es de 10%.

13. El 27 de junio de 2023 CCE consignó en el Tribunal la cantidad de $797,090.49, que es la cantidad que alega le corresponde pagar por concepto de arbitrios de construcción según su Primera Declaración de Actividad Detallada.

Además, concluyó el foro primario que las alegaciones de CCE sobre los descuentos y aplicación del caso *ECA v. Municipio de Mayagüez,* supra, no se sostienen en derecho, ni a la luz de las propias alegaciones. Tomando en cuenta lo anterior, el TPI resolvió que el legislador expresamente había determinado que el costo total de la obra sería el valor tomado en cuenta en la adjudicación de la subasta por la agencia contratante y que no se permite ninguna deducción que no esté

expresamente aprobada en la ley. De esta manera, el foro apelado explicó que el legislador eliminó todas las deducciones reconocidas anteriormente en la ley. A tenor, el TPI dispuso que el Municipio actuó correctamente al basarse en el lenguaje expreso de la legislación vigente sobre el cobro de arbitrios de construcción. Al amparo de lo anterior, determinó que la Ley de Municipios Autónomos y la jurisprudencia interpretativa utilizada por el apelante para sostener sus alegaciones eran jurídicamente inaplicables a su caso, de manera que, las alegaciones presentadas en la *Demanda* eran erróneas.

En consideración a la alegación del CCE de que el Municipio no tenía jurisdicción, el TPI determinó que el apelante no entregó la primera *Declaración de Actividades detalladas* a la Oficina del Director de Finanzas como lo requiere el Art. 2110 de la Ley 107-2020, *supra*. Asimismo, el TPI concluyó que a partir de la segunda *Declaración de Actividad Detallada* comenzaron a computarse los términos dispuestos para contestar.[6] Finalmente, el foro primario entendió que no existía causa de acción ante la ausencia de alegaciones que establecieran el derecho reclamado para las deducciones. A esos efectos, el TPI declaró con lugar la *Solicitud de Desestimación* presentada por el Municipio y dispuso lo siguiente:

> Disponiéndose que el cálculo del arbitrio adecuado es a base del costo total de la obra del valor tomado en cuenta en la adjudicación de la subasta y el contrato suscrito por la agencia contratante de $18,320,000.00 aplicándole, de conformidad con la Ordenanza municipal vigente el tipo contributivo para estos proyectos de un 10%, lo que equivale a un pago de $1,832,000.00 y luego de deducirle las deducciones permitidas por Ley; Sellos del CIAPR ($18,320.00) y Planos y Shop Drawings ($50,000.00) para una deducción total de $68,320.00. Sujetas estas deducciones a la muestra de evidencia, el monto total a pagar por concepto de arbitrios de $1,825,168.00.

Insatisfecho, el 18 de septiembre de 2023, CCE presentó *Moción de Reconsideración y Solicitando Determinaciones de hechos adicionales*. Argumentó que la oposición presentada por el Municipio incumplía con la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3. Asimismo,

---

[6] Término que el foro primario dio por interrumpido al presentarse la *Demanda* de epígrafe.

manifestó que estaba en controversia el hecho de si se entregó o no la declaración a la Oficina de Finanzas, y que dicho asunto no se podía resolver de forma sumaria. Consecuentemente, CCE presentó una declaración jurada del ingeniero Nicolás Gelabert Valentín (ingeniero) donde establece las gestiones realizadas para entregar la declaración. En la declaración jurada, el ingeniero indicó que le entregó la *Declaración de Actividad Detallada* al señor Luis Rodríguez, quien le dijo que era el Director de Finanzas en propiedad.[7]

Por otra parte, el apelante arguyó que la segunda declaración no activó los términos nuevamente, debido a que sometió la declaración revisada como un acto extrajudicial transaccional, en aras de evitar un pleito. A tales efectos, sostiene que dicha comunicación y cualquier otra que fuera hecha de manera transaccional estaba protegida por las Reglas de Evidencia de Puerto Rico.[8]

Por último, CCE solicitó que el foro primario determinara que: (1) éste radicó conforme a derecho su declaración el 9 de enero de 2023 ante la Oficina de Finanzas del Municipio; (2) que el Municipio actuó sin jurisdicción al formular una determinación sobre la declaración sometida luego de 15 días de haberse presentado por lo que aprobó tácitamente dicha declaración; (3) y que en la alternativa, el Tribunal reconociera todas aquellas partidas que forman parte de la ley como deducciones permisibles y que no fueron consideradas en la Sentencia.

En respuesta, el 12 de diciembre de 2023, el Municipio presentó *Escrito en cumplimiento de orden en réplica a moción de reconsideración y solicitando determinaciones de hechos adicionales de la parte demandante.* El Municipio presentó como evidencia: (1) Notificación de Nombramiento y Juramento, (2) Resolución número 18 de la Primera Sesión Ordinaria de la Serie 2022-2023 de la Legislatura Municipal de Las Marías; y (3)

---

[7] *Véase*, Apéndice del recurso, a la pág. 27.
[8] *Véase*, Apéndice del recurso, a la pág. 24.

Declaración Jurada del señor Luis Antonio Rodríguez Aponte. De los referidos documentos surge que el señor Luis Antonio Rodríguez Aponte fue juramentado como Director de Finanzas del Municipio el 1ero de febrero de 2023 y que su nombramiento fue aprobado por la legislatura Municipal el 18 de mayo de 2023.[9] Además, el señor Luis Antonio Rodríguez Aponte afirmó en su declaración jurada que no se le entregó la *Declaración de Actividad Detallada* y que tampoco se identificó como Director de Finanzas el 9 de enero de 2023, pues advino al cargo en el mes de febrero.

El 2 de enero de 2024, el TPI emitió *Resolución* declarando *no ha lugar* la reconsideración presentada.

Inconforme con la determinación, el 1 de febrero de 2024, CCE compareció ante nosotros mediante el recurso de apelación y señaló la comisión de los siguientes errores:

A. Erró el Tribunal de Primera Instancia en la aplicación del derecho al desestimar la Demanda de forma sumaria y confirmar la determinación del Municipio sobre el cobro de arbitrios.
B. Erró el Tribunal de Primera Instancia al declarar que al CCE someter la Declaración de Actividad Detallada revisada el 23 de febrero de 2023, comenzó a decursar nuevamente el término improrrogable de 15 días que tiene el Municipio para rechazar el valor estimado de la obra sujeto a arbitrios de construcción.
C. Erró el Tribunal de Primera Instancia al concluir que la Declaración de Actividad Detallada tiene que ser entregada al Director de Finanzas del Municipio.
D. Erró el Tribunal de Primera Instancia al resolver que las deducciones notificadas por CCE en la Declaración de Actividad Detallada no cumplen con las normativas vigentes.

## II. Exposición de Derecho

### A. Sobre el poder tributario del Estado y los municipios

La Constitución del Estado Libre Asociado de Puerto Rico establece la facultad de imponer contribuciones sobre la Asamblea Legislativa. La misma dispone que, *[e]l poder del Estado Libre Asociado para imponer y cobrar contribuciones y autorizar su imposición y cobro por los municipios se ejercerá según se disponga por la Asamblea Legislativa, y nunca será*

---

[9] Ver anejos en las págs. 134-138.

*rendido o suspendido.* Art. VI, Sec. 2, Const. ELA, 1 LPRA, pág. 420. Según se desprende, aunque los municipios no ostentan un poder tributario inherente, *la Asamblea Legislativa mediante mandato claro y expreso puede delegar en* [los municipios] *la autoridad para imponer y cobrar contribuciones, derechos, arbitrios e impuestos razonables dentro de sus límites territoriales y sobre materias no incompatibles con la tributación impuesta por el Estado. Interior Developers, Inc. v. Mun. de San Juan*, 177 DPR 693, 703 (2009); *Café Rico, Inc. v. Mun. de Mayagüez*, 155 DPR 548, 553 (2001). Es decir, *los municipios no tienen un poder inherente, independiente del Estado, para imponer contribuciones. ECA General Contractors, Inc. v. Municipio,* 200 DPR 665, 675 (2018) citando a *Levy, Hijo v. Mun. de Manatí*, 151 DPR 292, 299 (2000); *Ortiz v. Municipio San Juan,* 167 DPR 609, 613 (2006).

El poder impositivo de los municipios quedó consignado en la Ley Núm. 81 del 30 de agosto de 1991,[10] conocida como Ley de Municipios Autónomos de Puerto Rico (Ley de Municipios Autónomos o Ley Núm. 81-1991). Esta ley tuvo como propósito principal otorgar a los municipios un mayor grado de autonomía fiscal y de gobierno propio para que pudieran atender cabalmente sus responsabilidades. Véase, Exposición de Motivos, Ley Núm. 81-1991. Como parte de la mencionada política pública, se le reconoció a todo municipio autonomía en el orden jurídico, económico y administrativo, lo que incluía la libre administración de sus bienes, disposición de sus ingresos y la forma de recaudarlos e invertirlos. Art. 1.006 (a) de la Ley Núm. 81, 21 LPRA sec. 4004 (a). Consecuentemente, la Ley de Municipios Autónomos otorgó la facultad a las entidades municipales de imponer y cobrar contribuciones o tributos, entre ellos, la de imponer y cobrar contribuciones, derechos, licencias, arbitrios de construcción y otros arbitrios e impuestos, tasas y tarifas razonables,

---

[10] La Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico fue derogada y sustituida por el Código Municipal de Puerto Rico, Ley Núm. 107 de 14 de agosto de 2020.

dentro de los límites territoriales del municipio a través de ordenanzas municipales. Art. 1.003 (cc) y 2.002 (d) de la Ley Núm. 81-1991, 21 LPRA sec. 4001 (cc) y 21 LPRA sec. 4052 (d). *HBA Contractors v. Mun. de Ceiba*, 166 DPR 443, 454 (2005).

A la luz de la normativa antes mencionada, la cual estaba vigente al momento de los hechos que suscitaron la controversia resuelta por el Tribunal Supremo en *ECA Contractors v. Mun. de Mayagüez,* supra*,* para que surgiera la obligación de pagar el arbitrio de construcción debían concurrir las siguientes circunstancias: (1) que haya una obra de construcción; (2) que se encuentre dentro de los límites territoriales del municipio, y (3) que esta fuera realizada por una persona natural o jurídica privada, o una persona natural o jurídica privada contratada por una agencia o dependencia del gobierno central, municipal o federal. *Interior Developers v. Mun. de San Juan*, supra, pág. 705. Además, la fecha determinante para la imposición del arbitrio de construcción es la del cierre de la subasta debidamente convocada. Art. 2.002 (d) de la Ley de Municipios Autónomos, *supra.* Ahora bien, el arbitrio de construcción a ser pagado será calculado en base al costo total de la obra <u>menos</u> *el costo de adquisición de terrenos, edificaciones ya construidas y enclavadas en el lugar de la obra, costos de estudios, diseños, planos, permisos, consultoría y servicios legales.* Art. 2.002 (d) de la Ley de Municipios Autónomos, *supra.* A su vez, el Art. 1.003 (cc) define "arbitrio de construcción" como *aquella contribución impuesta por los municipios a través de una ordenanza municipal aprobada con dos terceras partes para ese fin, la cual recae sobre el derecho de llevar a cabo una actividad de construcción o una obra de construcción dentro de los límites territoriales del municipio.* Ahora bien, el Art. 1003 (dd) de la Ley de Municipios Autónomos, *supra*, define "actividad de construcción" como *el acto o actividad de construir, reconstruir, ampliar, reparar, demoler, remover, trasladar o relocalizar cualquier edificación, obra, estructura, casa o construcción de similar naturaleza fija y permanente, pública o privada, realizada entre los límites territoriales de un municipio.*

Entonces, al interpretar el Art. 2.002 (d) de la Ley de Municipios Autónomos, *supra,* en armonía con la definición de "arbitrio de construcción" y la de "actividad de construcción" antes citadas, el Tribunal Supremo concluyó que la Asamblea Legislativa excluyó *aquellas partidas que no constituyen una actividad directa de construcción y en las que se incurre antes de comenzar la obra o construcción, evitando así una carga onerosa para el diseño de la obra. ECA Contractors v. Mun. de Mayagüez,* supra, en la pág. 677.

La antes citada Ley Núm. 81-1991 fue enmendada por la Ley 50 del año 2018, 21 LPRA 4052 (Ley Núm. 50-2018). Uno de los cambios introducidos por la ley antes citada fue la sustitución de la lista de deducciones contenida en el antiguo Art. 2.002 (d) de la Ley Núm. 81-199 por un nuevo lenguaje que limitó las deducciones al arbitrio de construcción a aquellas expresamente aprobadas por ley, mas suprimió las deducciones por interpretación. En contraste, la definición de "actividad de construcción" del Art. 1.003 (dd), no sufrió grandes cambios, sino que se sustituyeron las palabras "ampliar" y "demoler" por "remodelar" y "reparar".

Subsiguientemente, la Ley de Municipios Autónomos, según enmendada, *supra*, fue derogada y sustituida para la Ley 107 del 13 de agosto de 2020, según enmendada, conocida como el Código Municipal de Puerto Rico, Ley Núm. 107-2020, 21 LPRA sec. 7001 *et seq*. Esta ley faculta a las entidades municipales a imponer y cobrar contribuciones o tributos, entre ellos, los arbitrios de construcción y otros arbitrios e impuestos, tasas y tarifas razonables, dentro de los límites territoriales del municipio a través de ordenanzas municipales. Arts. 2.109 y 8.001 (17) de la Ley Núm. 107, 21 LPRA secs. 7331 y 8351. Por lo dispuesto, toda obra de construcción realizada por una persona natural o jurídica dentro de los límites territoriales municipales deberá pagar el arbitrio de construcción

que corresponda, previo al comienzo de dicha obra, a tenor con las ordenanzas aplicables. Art. 2.109 de la Ley Núm. 107-2020, Íd.

En lo que aquí concierne, el Código Municipal, *supra*, dispone que **el proceso de pago del arbitrio comienza con la radicación de una declaración de actividad** en la cual el contribuyente, sea el dueño de la obra o el contratista, **describa de forma detallada la actividad a realizarse**, estando debidamente organizada por renglones, y la someta a la **Oficina de Finanzas** del municipio que corresponda. (Énfasis suplido). Art. 2.110 (a) de la Ley Núm. 107-2020, 21 LPRA sec. 7332 (a).

Recibida dicha declaración, el Director de Finanzas de la municipalidad, o su representante autorizado, revisará el valor estimado de la obra declarada por el contribuyente e informará su decisión mediante correo certificado con acuse de recibo o entrega al solicitante, dentro del término de quince (15) días desde la radicación de la declaración de actividad. Art. 2.110 (b) de la Ley Núm. 107, 21 LPRA sec. 7332 (b). El Director de Finanzas, o su representante autorizado, podrá aceptar o rechazar el valor estimado de la obra declarada. Art. 2.110 (b)(1-2) de la Ley Núm. 107, 21 LPRA sec. 7332 (b)(1-2).

Sobre el pago del arbitrio de construcción, el Art. 2.109 de la Ley Núm. 107-2020, *supra,* dispone lo siguiente:

> **El arbitrio de construcción municipal será el vigente a la fecha de cierre de la subasta debidamente convocada** o a la fecha de la adjudicación del contrato para aquellas obras de construcción que no requieran subastas o que se hayan llevado a cabo bajo el proceso de solicitud de propuestas.
>
> …
>
> **Para los propósitos de la determinación del arbitrio de construcción, el costo total de la obra será el valor total tomado en cuenta en la adjudicación de la subasta por la agencia contratante,** o el precio total establecido en el contrato de construcción en el caso de contrataciones privadas o solicitudes de propuestas, siempre y cuando el Director de Finanzas determine que el precio estipulado en el contrato corresponde razonablemente con el costo promedio por pie cuadrado aceptable generalmente en la industria de la construcción. **En la determinación del arbitrio a pagar, únicamente podrá deducirse el costo de adquisición de terrenos, edificaciones ya construidas y enclavadas en el lugar de la obra, costos de estudios, diseños planos,**

**permisos, consultoría y servicios legales. Bajo ningún concepto se podrá reclamar deducciones por interpretación.** (Énfasis suplido).

Por último, hacemos énfasis en el mandato del inciso (5) del Art. 1.007 de la Ley Núm. 107-2020, 21 LPRA sec. 7012, de que *[n]o se eximirá, total o parcialmente, ni se prorrogará el pago de las contribuciones, patentes y tasas municipales a persona natural o jurídica alguna, salvo que por este Código o por ley se disponga o autorice expresamente tal exención,* o se autorice tal prórroga mediante ordenanza al efecto. (Énfasis suplido).

### B. Interpretación de las leyes

Como es sabido, *[l]a interpretación judicial debe propiciar la realización del verdadero propósito de la ley. Díaz Marín v. San Juan,* 117 DPR 334, 342-343 (1986), haciendo referencia a E.R. Bernier, *Aprobación e interpretación de las leyes en Puerto Rico,* San Juan, Colegio de Abogados, 1963, Cap. XLVIII, pág. 230. Las reglas para la interpretación legal las establece el artículo 19 del Código Civil de 2020, 31 LPRA 5341, el cual expresamente dispone que, *[c]uando la ley es clara y libre de toda ambigüedad, su texto no debe menospreciarse bajo el pretexto de cumplir su espíritu.* Por lo anterior, los tribunales sólo *están autorizados a interpretar las leyes cuando, entre otras, éstas no son claras o concluyentes sobre un punto en particular; cuando el objetivo, al realizarlo, es el de suplir una laguna en la misma, o cuando, con el propósito de mitigar los efectos adversos de la aplicación de una ley a una situación en particular, la justicia así lo requiere. Asoc. FCIAS v. Caribe Specialty II,* 179 DPR 923, 939 (2010) citando a *Pueblo v. Ortega Santiago,* 25 DPR 203, 214 (214). Empero, *cuando el legislador se ha manifestado en un lenguaje claro e inequívoco, el texto de la ley representa la expresión por excelencia de la intención legislativa. Bco. Santander v. Correa García,* 196 DPR 452, 467 (2016).

Como se sabe, *[e]s regla dorada de hermenéutica judicial, que las disposiciones de una ley deben ser examinadas e interpretadas de modo que no conduzcan a resultados irrazonables e insostenibles, sino armoniosos. San Gerónimo Caribe Project v. Registradora,* 189 DPR 849, 869; *Domínguez Castro v. ELA,* 178 DPR 375, 409 (2010). Resulta necesario que en nuestra interpretación armonicemos, hasta donde sea posible, todas las disposiciones de la ley con el propósito de lograr una interpretación integrada, lógica y razonable de la intención legislativa y de la **política pública que la inspira**. *Spyder Media, Inc v. Municipio de San Juan,* 194 DPR 547, 555-556 (2016); *Matos v. Junta Examinadora,* 165 DPR 741, 748-749 (2005); *Caribe Comms., Inc. v. PRTC,* 157 DPR 203, 211 (2002). (Énfasis suplido).

Cónsono con la normativa sobre la hermenéutica antes esbozada, añadimos que el Código Municipal declara su política pública como sigue:

> [S]e declara de **máximo interés público** que los municipios cuenten con los recursos necesarios para rendir sus servicios. Se dispone, por ende, que todas las ramas de Gobierno deberán proteger las fuentes de recursos municipales **y que las facultades tributarias municipales se interpretarán liberalmente a favor del pueblo representado por el municipio.** Art. 1.003 de la Ley Núm. 107-2020, 21 LPRA sec. 7003.

Asimismo, el Art. 1.005 de la Ley Núm. 107-2020, 21 LPRA sec. 7005, reitera la interpretación a favor de los municipios en aras de propiciar su política pública de garantizarles las facultades necesarias para atender eficazmente las necesidades y el bienestar de sus habitantes.

Hacemos énfasis en las expresiones de nuestro Tribunal Supremo respecto a que *la contratación gubernamental de servicios está revestida del más alto interés público, pues persigue fomentar la inversión adecuada, responsable y eficiente de los recursos del Estado. ECA v. Mun. de Mayagüez,* supra.

### C. Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2

La moción de desestimación al amparo de la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, es aquella que formula el demandado para solicitar que se desestime la demanda presentada en su contra. *González Méndez v. Acción Social de Puerto Rico,* 196 DPR 213, 234 (2016); *Aut. Tierras v. Moreno & Ruiz Dev. Corp.,* 174 DPR 409, 428 (2008). Esta regla dispone que la parte demandada puede presentar una moción de desestimación en la que esgrima las siguientes defensas: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) **dejar de exponer una reclamación que justifique la concesión de un remedio**; y (6) dejar de acumular una parte indispensable. 32 LPRA Ap. V, R. 10.2; *López García v. López García,* 200 DPR 50, 69 (2018); *González Méndez v. Acción Social de Puerto Rico,* supra*; Asoc. Fotoperiodistas v. Rivera Schatz,* 180 DPR 920, 935 (2011).

Al evaluar una petición presentada al amparo de la Regla 10.2, *supra,* el foro primario tiene que tomar como ciertos todos los hechos bien alegados en la demanda, y considerarlos de la manera más favorable a la parte demandante. *Bonnelly Sagrado v. United Surety & Indemity Company,* 207 DPR 715, 722 (2021); *Colón Rivera et al. v. ELA,* 189 DPR 1033, 1049 (2013); *El Día, Inc. v. Mun. de Guaynabo,* 187 DPR 811, 821 (2013). Así, para que una moción de desestimación pueda prosperar, **se tiene que demostrar de forma certera que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que se pudiere probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor.** *Cobra Acquisitions, LLC v. Municipio de Yabucoa,* 210 DPR 384, 396 (2022) citando a *Rivera Sanfeliz et al. v. Jta. Dir. FirstBank,* 193 DPR 38, 49 (2015), citando a *Ortiz Matías*

*et al. v. Mora Development,* 187 DPR 649, 654 (2013); *López García v. López García,* supra, pág. 70. (Énfasis suplido).

### III.   Aplicación del Derecho a los hechos

Los errores planteados por CCE son susceptibles de discusión en conjunto y así obraremos. Como adelantamos, el asunto ante nuestra adjudicación atañe a una acción de revisión judicial sobre arbitrios de construcción. Ello requiere que consideremos la citada Ley Núm. 107-2020, según enmendada, conocida como Código Municipal de Puerto Rico por ser la ley vigente al momento en que se suscitaron los hechos del presente caso. De forma específica, nos corresponde evaluar si debemos revocar la sentencia emitida por tribunal apelado, que determinó que no procedía deducir ciertas partidas de la base tributable, al computar el arbitrio de construcción de una obra realizada dentro de los límites territoriales del Municipio de Las Marías.

No obstante, antes de entrar en la discusión de dicha controversia, debemos dilucidar si la segunda declaración de actividad presentada por la CCE ante la Oficina de Finanzas el 22 de febrero de 2023 tuvo el efecto de reiniciar el término de 15 días para que el Director de Finanzas rechazara el valor estimado de la obra con el fin de determinar el arbitrio de construcción a ser pagado previo al comienzo de esta.

Como se expuso anteriormente, el Código Municipal, *supra*, requiere que se notifique **ante la Oficina de Finanzas** del municipio correspondiente **una declaración de actividad** para iniciar **el proceso de pago del arbitrio.** Art. 2.110 (a) de la Ley Núm. 107, 21 LPRA sec. 7332 (a). (Énfasis suplido). Recibir esta declaración activa el deber del Director de Finanzas de la municipalidad, o de su representante autorizado, de revisar el valor estimado de la obra declarada por el contribuyente e informar su decisión mediante correo certificado con acuse de recibo o entrega al solicitante, dentro del término de quince (15) días desde la radicación de la declaración de actividad. Art. 2.110 (b) de la Ley Núm. 107,

21 LPRA sec. 7332 (b). Por lo tanto, el cumplimiento con el requisito de presentar la declaración de actividad ante la Oficina de Finanzas era condición necesaria para que el Director de Finanzas procediera a aceptar o rechazar el valor de la obra estimado por CCE. Veamos.

El apelante alega que el 26 de diciembre de 2022 le envió una carta al Municipio con la *Declaración de actividad detallada para el cómputo de pago de arbitrios de construcción,* según requerido por el Artículo 2.110 (a) del Código Municipal de Puerto Rico, *supra.* Mediante la referida declaración el apelante presentó un desglose de las partidas que no estaban sujetas al arbitrio municipal por lo que, según sus cálculos, el monto a ser pagado en concepto de arbitrios de construcción era $797,090.49. No obstante, CCE aseveró en tres ocasiones distintas, sin acreditar el medio o acusar recibo, que le notificó dicha declaración de actividad al Sr. Víctor Miranda Ramos, Director de Finanza del Municipio de las Marías.[11] Entonces, a partir de esa primera notificación CCE hizo un cómputo de 42 días que alegadamente tardó el Municipio en contestar la primera declaración de actividad. Es decir, la contención de CCE respecto al rechazo inoportuno de la declaración del valor estimado de la obra por el Municipio se sostiene en que la primera declaración fue, en efecto, notificada el 26 de diciembre de 2023 al Director de Finanzas. Aun así, el TPI determinó que la primera Declaración de Actividad fue presentada por CCE el 9 de enero de 2023. Incluso, el propio apelante sostiene este hecho en la declaración jurada que acompañó su *Reconsideración.*

Ahora bien, el Art. 2.110 del Código Municipal, *supra*, no solo exige que se presente una declaración de actividad en cualquier dependencia

---

[11] La Demanda anejada a la pág. 32 establece lo siguiente: "...el demandante CCE envió al Municipio de las Marías el 26 de diciembre de 2022, una carta con la "declaración de actividad detallada para el cómputo de pago de arbitrios de construcción"". Similarmente, el recurso ante nos dispone que "...el 26 de diciembre de 2022, CCE le notificó al Sr. Víctor Miranda Ramos, Director de Finanzas del Municipio, una carta con la "Declaración de actividad detallada para el cómputo de pago de arbitrios de construcción". Además, de la segunda declaración anejada a la pág. 57 también surge que "Como recordará, el pasado 26 de diciembre de 2022 entregamos al Municipio la declaración de actividad detallada para el cómputo de pago de arbitrios de construcción.".

municipal, sino que se dirija específicamente hacia la Oficina de Finanzas. En otras palabras, dicho artículo es claro en que la declaración de actividad debe ser presentada ante la Oficina de Finanzas, y no exige que se le entregue directamente al Director de Finanzas. Sin embargo, este será el receptor último de la declaración de actividad, o su representante autorizado, para que pueda ejercer su función de revisar la declaración. Enfatizamos en que lo primordial es que la declaración de actividad sea presentada en la Oficina de Finanzas del municipio correspondiente y no en cualquier dependencia de este. Dicho esto, el TPI incluyó en sus determinaciones de hechos que la declaración de actividad no fue entregada al Director de Finanzas. A raíz de ello, CCE señaló como error la conclusión de que la declaración de actividad tenía que ser entregada al Director de Finanzas.

Entonces, aun si concluimos que el TPI erró al equiparar la presentación de la declaración de actividad a la Oficina de Finanzas con la entrega al Director de Finanzas y que, por lo tanto, CCE debió entregar la declaración ante la primera, el apelante no acreditó debidamente este hecho. Por ende, la conclusión de que el apelante incumplió con el Art. 2.110 del Código Municipal, *supra*, se mantendría inalterada.

A saber, la declaración jurada presentada por el apelante sostiene que el Sr. Nicolás Gelabert Valentín, en representación de CCE, entregó personalmente la declaración de actividad al Sr. Luis Rodríguez, quien se presentó como Director de Finanzas en propiedad, el 9 de enero de 2023. En contraste, la parte apelada acreditó lo siguiente: que el Sr. Luis Antonio Rodríguez Aponte fue nombrado y juramentó para dicho cargo el 1 de febrero de 2023; que su nombramiento fue aprobado por la Legislatura Municipal el 18 de mayo de 2023; que nunca conversó con el representante de CCE; que no es cierto que se haya presentado como Director de Finanzas en propiedad el 9 de enero de 2023 ante persona alguna; y que no firmó como acuse de recibo copia alguna de la declaración de actividad en dicha fecha. En razón de todo lo anterior, no se justifica nuestra intervención con

las determinaciones de hecho del TPI y, por consiguiente, el tercer error no fue cometido.

Por otro lado, es de particular importancia para el presente caso el hecho de que CCE notificó el 22 de febrero de 2023 una *Declaración REVISADA de actividad detallada para el computo de pago de arbitrios de construcción y solicitud de plan de pago* al Municipio. En esta, CCE sugiere que, aplicando los principios de buena fe, y en aras de buscar una solución, revisaron su declaración y la modificaron. El nuevo total pagadero en concepto de arbitrios de construcción calculado por CCE fue $960,270.27 de los $797,090.49 que originalmente notificó. La nueva cifra representaba un aumento de casi un 20% de los arbitrios computados en la declaración original. No nos persuade el argumento de la parte apelante por las razones que explicaremos a continuación.

La segunda declaración de actividad tuvo como causa el propio incumplimiento de CCE al presentar una primera declaración de actividad con un cómputo de arbitrios de construcción menor al que estaba sujeto a pagar. Sobre este asunto elaboraremos más adelante, pero en este punto basta con decir que la primera declaración contenía deducciones que no proceden en derecho. Entonces, el percatarse de las deficiencias de las que adolecía la primera declaración de actividad y presentar una segunda tuvo el efecto de sustituir la primera. De esta manera, comenzó a decursar nuevamente el término de 15 días después de radicada la declaración para que el Director de Finanzas informara su decisión mediante correo certificado con acuse de recibo o entrega registrada con acuse de recibo al solicitante. Véase el Art. 2.110 (a) de la Ley Núm. 107-2020, *supra.*

Nótese que no había impedimento alguno para que el apelante siguiera el curso para reclamar el pago de arbitrio dispuesto en el Art. 2.110 (c), *supra*, tras presentar la primera declaración de actividad. Sin embargo, CCE optó por enmendar su primera declaración de actividad al notificar la segunda declaración, para luego pedirle a este Tribunal que le reconociera

validez solo a la primera. *La conducta contradictoria no tiene lugar en el campo del Derecho, y debe ser impedida. Carabarin v. ARPE,* 132 DPR 938, 959 (1993).

En fin, el pago de arbitrios de construcción es una obligación estatutaria no sujeta a deducciones que no están contempladas en la ley. Por lo cual, el liberar arbitrariamente de las obligaciones tributarias reconocidas por el propio contribuyente tendría un resultado inconsistente y detrimental para la política pública que recoge el Código Municipal en cuanto a garantizar las facultades necesarias para atender eficazmente las necesidades y el bienestar de sus habitantes. Entonces, dado que las nuevas sumas propuestas por CCE resultaban incompatibles con aquellas contenidas en la declaración original, la segunda declaración dejó sin efecto la primera. Esto a su vez, reactivó el deber del Director de Finanzas de revisar el valor estimado de la obra declarada por el CCE e informar su decisión dentro de quince (15) días después de radicada la segunda declaración de actividad. Dicho término quedó interrumpido por la presentación de la Demanda en Revisión Judicial el 27 de febrero de 2023. Consecuentemente, el segundo error planteado por la parte apelante tampoco fue cometido.

Resuelto lo anterior, nos resta expresarnos sobre si debemos revocar la sentencia emitida por el TPI, donde determinó que no procedía deducir ciertas partidas de la base tributable, al computar el arbitrio de construcción de una obra realizada dentro de los límites territoriales del Municipio de Las Marías. La postura de CCE es que el Municipio pretendía imponerle el pago de arbitrios municipales por partidas que no forman parte de la actividad de construcción en contravención a lo resuelto en *ECA v. Municipio de Mayagüez, supra.* Al contrario, el Municipio solicitó la desestimación del caso bajo la Regla 10.2 de Procedimiento Civil, *supra,* por dejar de exponer una reclamación que justificara la concesión de un remedio, toda vez que *ECA v. Mun. de Mayagüez,* supra*,* resultaba inaplicable al presente caso.

Como indicamos anteriormente, *ECA v. Mun. de Mayagüez,* supra*,* fue resuelto bajo la Ley Núm. 81 del 30 de agosto de 1991,[12] conocida como Ley de Municipios Autónomos de Puerto Rico (Ley de Municipios Autónomos o Ley Núm. 81-1991). Al interpretar el Art. 2.002 (d) de la Ley de Municipios Autónomos, *supra,* en armonía con la definición de "arbitrio de construcción" y la de "actividad de construcción" antes citadas*,* el Tribunal Supremo determinó que se podían deducir *aquellas partidas que no constituyen una actividad directa de construcción y en las que se incurre antes de comenzar la obra o construcción, evitando así una carga onerosa para el diseño de la obra. ECA Contractors v. Mun. de Mayagüez, supra.* (Énfasis suplido).

Posteriormente, la Ley de Municipios Autónomos fue enmendada por la Ley 50 del año 2018, 21 LPRA 4052, (Ley Núm. 50-2018). Entre los cambios introducidos por esta nueva ley se encontró la enmienda del Artículo 2.002 (d) de la Ley Núm. 81-1991, *supra.* En el proceso de aprobación de la Ley Núm. 50-2018, La Comisión de Asuntos Municipales de la Cámara de Representantes de Puerto Rico se expresó como sigue:

> consideramos necesario enmendar el inciso (d) [último párrafo] del Artículo 2.002 de la Ley 81-1991, *supra,* a los fines de aclarar lo que considera el costo total de la obra y la base tributaria del proyecto, además, de **establecer de manera taxativa las partidas y deducciones que recaen fuera del cómputo del costo total de la obra.** P. de la C. 18 de 9 de enero de 2017, 1ra Sesión Ordinaria, Decimoctava Asamblea Legislativa, pág. 161. (Énfasis suplido).

Acorde con ello, el texto del Art. 2.002 (d) de la Ley 81-1991, *supra,* propuesto fue el siguiente:

> (d) …
>
> Para los propósitos de la determinación del arbitrio de construcción, el costo total de la obra será el costo *de toda actividad directa de construcción, que ocurren durante y como parte de la obra de construcción,* en que se incurra para realizar el proyecto luego de deducirle**, *exclusivamente,*** **el costo de adquisición de terrenos, edificaciones ya construidas y enclavadas en el lugar de la obra, costos de estudios,**

---

[12] La Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico fue derogada y sustituida por el Código Municipal de Puerto Rico, Ley Núm. 107 de 14 de agosto de 2020.

**diseños, planos, permisos, consultoría y servicios legales.**
Íd., en las págs. 155-156. (Énfasis suplido).

El texto finalmente aprobado eliminó las disposiciones sobre deducciones por concepto de *costo de adquisición de terrenos, edificaciones ya construidas y enclavadas en el lugar de la obra, costos de estudios, diseños, planos, permisos, consultoría y servicios legales.* A su vez, se introdujo un nuevo lenguaje que limitó las deducciones al valor estimado de la obra para calcular el arbitrio de construcción correspondiente a aquellas expresamente aprobadas por ley, mas suprimió las deducciones por interpretación. Resulta claro, pues, que la intención legislativa es restringir y regular expresamente las deducciones permitidas al cálculo de los arbitrios de construcción.

La lista de deducciones antes mencionada fue reincorporada *ad verbatim* por el Código Municipal, *supra*, el cual derogó y sustituyó la Ley de Municipios Autónomos, según enmendada, *supra*. El Art. 2.109 del Código Municipal, supra, recoge tanto la lista taxativa de deducciones permitidas del Art. 2.002 (d) de la Ley 81-1991, así como las restricciones contenidas en el Art. 2.002 (d) de la Ley 50-2018. El texto del citado Art. 2.109 lee como sigue: *[e]n la determinación del arbitrio a pagar, **únicamente** podrá deducirse el costo de adquisición de terrenos, edificaciones ya construidas y enclavadas en el lugar de la obra, costos de estudios, diseños planos, permisos, consultoría y servicios legales. **Bajo ningún concepto se podrá reclamar deducciones por interpretación.*** Del lenguaje tajante usado por el legislador, específicamente las palabras "únicamente" y "bajo ningún concepto", resulta evidente, pues, que al adoptar el Art. 2.109, *supra*, reiteró su intención de confirmar el carácter taxativo de las deducciones permitidas.

A su vez, esta interpretación es la única forma de armonizar la intención legislativa con el mandato del Tribunal Supremo en cuanto a que *los tribunales no debemos interpretar la legislación contributiva de forma*

*extensiva, sino en forma justa de acuerdo con sus propios términos. IFCO Recycling v. Aut. Desp. Solidos,* 184 DPR 712, en las págs. 741-742, (2012).

Además, al concluir de esta forma damos cumplimiento con el propósito de lograr una interpretación integrada, lógica y razonable de la intención legislativa y de la **política pública que la inspira**. *Spyder Media, Inc v. Municipio de San Juan,* 194 DPR 547, 555-556 (2016); *Matos v. Junta Examinadora,* 165 DPR 741, 748-749 (2005); *Caribe Comms., Inc. v. PRTC,* 157 DPR 203, 211 (2002). (Énfasis suplido).

Como se puede apreciar, el caso de epígrafe es distingible del caso *ECA v. Mun. de Mayagüez,* supra, resuelto bajo la legislación anterior. La normativa vigente al momento de surgir la controversia ante nos, provee taxativamente las deducciones que se pueden realizar, mas prohíbe las deducciones por interpretación. Cuando CCE fundamenta su derecho a las deducciones basándose en la norma de *ECA v. Mun. de Mayagüez*, supra, propone que vayamos en contra del mandato expreso legislativo al realizar una deducción por interpretación, lo cual conllevaría al absurdo de que el pago de arbitrios de construcción esté sujeto a la interpretación de los contribuyentes. Por lo tanto, en aras de garantizar las facultades fiscalizadoras de los municipios y maximizar la eficiencia de servicios a la ciudadanía concluimos que la norma de *ECA v. Mun. de Mayagüez,* supra, ECA es incompatible con el Código Municipal, *supra.*

En fin, el resto de los errores planteados por CCE no fueron cometidos. Concluimos que *ECA v. Mun. de Mayagüez*, supra, es inaplicable a la presente controversia, lo cual resulta en que las deducciones notificadas por CCE en la declaración de actividad no cumplen con la normativa vigente.

Toda vez que se ha dejado de exponer una reclamación que justifique la concesión de un remedio, procede la desestimación del presente recurso al amparo de la Regla 10.2 de Procedimiento Civil, *supra.*

## VI. Parte Dispositiva

Por los fundamentos que anteceden, se confirma la Sentencia apelada.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones